(No. 34398.—

The People *ex rel.* Karl K. Hoagland *et al.*, Petitioners, *vs.* I. H. Streeper III, Judge, Respondent.

*Opinion filed September 20, 1957—Rehearing denied Nov. 19, 1957.*

JOHN M. DALTON, Attorney General of Missouri, and ROBERT E. HYDER, both of Jefferson City, Missouri, and KARL K. HOAGLAND, of Alton, for petitioners.

SCHAEFER O'NEILL, ANTHONY W. DALY, and EMERSON BAETZ, all of Alton, for respondent.

PATRICK S. O'NEILL, Corporation Counsel, of Alton, for *amicus curiae*, the City of Alton.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

This is an original petition for a writ of *mandamus* against the respondent, as judge of the city court of Alton, to compel him to expunge orders entered in an action brought in that court by the city of Alton against the county of St. Charles in the State of Missouri, the county court of St. Charles County, and the judges of the county court, to enjoin the conveyance of the portion of the Clark Bridge within the city of Alton, and to appoint a receiver. The State of Missouri and the People of the State of Illinois, *ex rel.* Karl K. Hoagland, petitioners, were not parties to the action in the city court of Alton, but here claim to have interests affected by the decree. Because serious questions of public importance appeared to be involved, we granted leave to file this original petition.

The Clark Bridge, a part of a highway facility constructed in 1928 between Alton, Illinois, and St. Louis, Missouri, and here in controversy, was constructed over the Mississippi River, and the Lewis Bridge over the Missouri River. These bridges were connected by a three-mile private roadway through St. Charles County, Missouri, and the total facility affords the most direct route between Alton and St. Louis, and is a link in U.S. Route 67, serving through traffic between northwestern Illinois and the southwestern States. The bridges and connecting highway were constructed in 1928 by private parties pursuant to Federal authorization and local franchises. Pub. L. 274, H.R. 10090, 69th Cong., 1st Sess.; Pub. L. 679, H.R. 16778, 69th Cong., 2nd Sess.; Ordinance 1601, City of Alton, Feb. 9, 1927.

Due to financial difficulties of the promoters and their successors, the entire private facility was sold to the county of St. Charles, Missouri, in 1936. It was thereafter managed by the county court of St. Charles County, a political unit in all material ways comparable to an Illinois county board of supervisors. In the same year the county entered into a contract with the State Highway Commission of Missouri, whereby the Highway Commission purchased the connecting highway and was given an option to acquire the remaining part of the facility when the revenue bonds had been retired. Pursuant to this contract the Highway Commission acquired the Lewis Bridge on December 29, 1950, and freed it from toll charges after January 1, 1951.

Subsequently it became apparent that flood waters would render the connecting highway between the two bridges impassable from time to time, and in 1952, the county and the Highway Commission modified their 1936 contract to provide that the Highway Commission would construct a separate levee-type connecting highway to be paid for out of tolls collected by the county until June 30, 1956. The modified contract also permitted the county to use toll

revenues to "improve, alter and enlarge the approach to the Clark Bridge in the City of Alton, Illinois."

Thereafter tolls in the sum of $2,140,000, collected at the sole toll station in Alton, were used to construct the new connecting highway in St. Charles County, but no funds were used to improve the approach to the Clark Bridge in Alton.

On or about June 1, 1956, the county of St. Charles announced that it would discontinue the collection of toll charges on July 1, 1956, and on June 25, 1956, it ordered the conveyance of the Clark Bridge and its approaches to "the State of Missouri acting by and through the State Highway Commission of Missouri."

Thereafter, on June 28, 1956, the city of Alton filed a complaint in the city court of Alton against the county of St. Charles in the State of Missouri, a body politic and corporate, the county court of St. Charles County and the judges thereof. The complaint set up the threatened transfer of the bridge; that the Clark Bridge enters the principal east-west business street in Alton at grade and at a right angle, interferes with traffic and constitutes a hazard to the public; that it was contemplated that tolls would be charged after the retirement of the outstanding bonds for the purpose of furnishing funds for the construction of new bridge approaches in Alton.

It was further alleged that the city of Alton and its citizens would suffer grave and irreparable damage by the threatened transfer of the bridge in that (1) no funds would be available for the construction of new Alton approaches; (2) the city of Alton would be deprived of all control of the portion of bridge located therein; (3) the city may be liable for injuries sustained on the approaches without a right to recover over; and (4) the bridge, if unguarded, would create a hazard to children and other pedestrians.

The complaint prayed for an injunction against the transfer of that part of the bridge facility lying within the city of Alton and against the elimination of toll charges, and for the appointment of a receiver to take over and control that portion of the bridge facility.

On June 28, a temporary injunction issued, a receiver was appointed, and the court ordered that the receiver should cease to act if the defendants acquiesced in the provisions of the injunction. A further order was entered on June 29 continuing the receivership, and authorizing the employment of persons and the collection of tolls. The receiver thereafter took over the portion of the bridge facility within the city of Alton and has been exacting tolls for its use.

Neither the State of Missouri nor the State Highway Commission were made parties to the injunction suit. Summons and a copy of the complaint were served on all the defendants by service on L. H. Maas, as agent of the county of St. Charles, and by further service on A. J. Echele, assistant manager, agent and clerk of the county at their office in Alton, by the Sheriff of Madison County, and were also personally served upon all of the judges of the county court of the county of St. Charles in the State of Missouri, by the sheriff of St. Charles County, Missouri, in said county and State. Similar service was obtained in the State of Missouri on the county court of St. Charles County and on the county of St. Charles.

The entire bridge facility was subsequently conveyed to the State of Missouri, by and through its State Highway Commission. Thereafter on August 10, 1956, default was entered against the named defendants for want of appearance; and the city court heard the plaintiff's evidence and entered a final decree. That decree found *inter alia*, that defendants' use of their rights and franchises with respect to the bridge facility "was not fair or equitable when it exercised its power to collect tolls to the extent necessary

to furnish necessary improvements without burdening the taxpayers of its own territory, but declined to exercise its power to the extent necessary to furnish like improvement without burden to the taxpayers of the territory adjoining," and that such constituted a fraud, "well within the power and duty of a Court of equity to prevent." The decree continued the injunction until further order of the court, and the receivership until the approval of some plan for the construction of necessary approaches to the Clark Bridge in the city of Alton.

The petitioners contend that the proceedings and orders of the city court of Alton are void and should be expunged because (1) they ignore the immunity of the State of Missouri from judicial interference, and (2) there was a lack of jurisdiction of persons and subject matter appearing on the face of the record.

The respondent urges that the immunity of a sovereign cannot be extended to lands in another state; that proper service was had upon the county of St. Charles; and that joinder of the State of Missouri was not indispensable.

In determining these issues, we must be mindful of the office of an original petition for writ of *mandamus,* and of the record and issues it presents. The record before us consists solely of the petition, answer and response, together with the exhibits attached thereto. *Mandamus* is a summary, drastic common-law writ of an extraordinary character, and is sometimes called the highest judicial writ known to the law. *People ex rel. Dolan* v. *Dusher,* 411 Ill. 535; *People ex rel. Koester* v. *Board of Review,* 351 Ill. 301.

In order to prevail, the petitioners must establish by the pleadings before us that the city court of Alton was without jurisdiction over the parties or the subject matter, or that it was without jurisdiction to enter the type of order complained of. Here, we concern ourselves neither with possible errors in the trial court, nor with an abuse of

judicial discretion. *People ex rel. Brignall* v. *Lewe,* 383 Ill. 549.

There can be no question that the city court of Alton is invested with general chancery jurisdiction. (Ill. Rev. Stat. 1955, chap. 37, par. 333; *Conrad* v. *Conrad,* 396 Ill. 101; *Baker* v. *Rockabrand,* 118 Ill. 365.) It is axiomatic that a court of chancery may assume jurisdiction of a cause on the ground of irreparable injury or fraud, and may issue injunction and appoint a receiver in aid of and to enforce its equitable remedies.

In 1928, the entire toll bridge facility was constructed by a private corporation pursuant to appropriate acts of Congress, authority of the Secretary of War, franchises from the city of Alton, and presumably from the States of Illinois and Missouri, or some subdivisions thereof. This record is silent as to the terms of such franchises. However it does not affirmatively show a lack of jurisdiction in the city court to determine the issues before it. It is also clear that the jurisdiction of a State, through its duly authorized courts, extends through its boundaries, and a State may give its courts jurisdiction of things within these boundaries. Such jurisdiction is considered *in rem,* in the sense that, the thing being within the jurisdiction of a State, the State may deal with it as it pleases. Beale, Conflict of Laws, (1935) Vol. 1, p. 435; *Pennoyer* v. *Neff,* 95 U.S. 714, 24 L. ed. 565.

We conclude that the city court of Alton had jurisdiction of the subject matter of this litigation, and we turn next to the question of jurisdiction of the necessary parties. It is contended by petitioners that the county is a political subdivision, immune from a suit of this nature, and that it was not properly served with process. They further argue that the State of Missouri is immune from suit, is not before the city court of Alton, and that its presence is indispensable to the jurisdiction of that court.

In determining these questions, we must consider the

status of the county of St. Charles, as a landowner in the city of Alton. Neither the general powers of the county of St. Charles, under Missouri law, nor its special powers pursuant to the enabling act under which it purchased the bridge facility, have been suggested to us in this record. It must be noted, however, that the State of Illinois and the city of Alton had the authority to impose conditions on the right to own and operate a toll bridge facility within their respective boundaries. Regardless of its peculiar corporate or municipal status in the State of Missouri, the county of St. Charles entered Illinois and the city of Alton as a proprietor of land, subject to the conditions imposed upon it. While the construction and maintenance of roads and bridges within a State, whether toll or free, has been considered a governmental function, (*Bettencourt* v. *State,* 123 Cal. App.2d 60, 266 P.2d 201,) the ownership of such facilities in another State is uniformly considered a private function. *City of Augusta* v. *Hudson,* 88 Ga. 599, 15 S.E. 678; *Hoppe* v. *City of Winona,* 113 Minn. 252, 129 N.W. 577; Anno. 43 A.L.R.2d 550.

The sovereignty of one State does not extend into the territory of another so as to create immunity from suit or freedom from judicial interference. Land acquired by one State in another is held subject to the laws of the latter and to all the incidents of private ownership. The bridge enterprise in the State of Illinois was a private undertaking by the county of St. Charles, and it therefore occupies the same position here as a private entity authorized to own and operate a toll bridge in Illinois. As to such property, the county of St. Charles cannot maintain its sovereign privileges or immunities. *State of Georgia* v. *City of Chattanooga,* 264 U.S. 472, 480, 481, 68 L. ed. 796, 799; *City of Cincinnati* v. *Commonwealth,* 292 Ky. 597, 604-606, 167 S.W.2d 701, 714; *Baker* v. *City of Kansas City, Missouri,* 118 Kan. 27, 28, 233 Pac. 1012, 1013; *State* v. *Holcomb,* 85 Kan. 178, 186-187, 116 Pac. 251, 254.

As we pointed out in *People ex rel. Murray* v. *City of St. Louis,* 291 Ill. 600, 606, a Missouri municipality is not a municipality of this State. It does not avail the petitioners to argue that the foregoing decisions do not involve the precise judicial action here attempted. The principles there announced are analogous and applicable to this extraordinary action. If it were otherwise, the acquisition of land in Illinois by another State would effect a separate island of sovereignty within our boundaries. Such possibility can find no support in the law or reason.

While we are without information from the record, we assume that title to the facility was held by the county of St. Charles as a suable entity, and if it saw fit to acquire land within the boundaries of this State, it became amenable to process under our laws. (*Baker* v. *City of Kansas City, Missouri,* 118 Kan. 27, 233 Pac. 1012.) Personal service of summons and a copy of the complaint was had upon all defendants in the city of Alton, by serving the agents of the county of St. Charles who were operating the bridge facility, as well as by personal service thereof upon all the judges of the county court of St. Charles County, and upon the county of St. Charles and the county court of St. Charles County, by delivery to its judges within St. Charles County, Missouri. Upon this assumption, concerning the title of the bridge, and in view of such service of process upon these defendants and the nature of the enterprise involved, it appears that the city court of Alton had adequate jurisdiction to subject such defendants to a judgment either *in personam* or *in rem.* (Ill. Rev. Stat. 1955, chap. 37, par. 347; chap. 110, pars. 13.3, 16 and 17.) The county of St. Charles, as proprietor of the property within Alton, Illinois, had sufficient minimal contacts with the city of Alton to make it amenable to process and had actual notice of the proceedings. (Ill. Rev. Stat. 1955, chap. 37, par. 347; chap. 110, pars. 13.3, 16 and 17; *International Shoe Co.* v. *State of Washington,* 326 U.S. 310,

317, 90 L. ed. 95; *Nelson* v. *Miller*, 11 Ill.2d 378.) Jurisdiction obtained by such service of process cannot be considered totally void.

Petitioners have also urged that the process of the city court of Alton cannot go outside its territorial boundaries. However, we have decided that the legislature has validly authorized a city court to send its process beyond its territorial limits. (*Chappelle* v. *Sorenson*, 11 Ill.2d 472; *Weiss Memorial Hospital* v. *Kroncke*, 12 Ill.2d 98; Ill. Rev. Stat. 1955, chap. 37, par. 347; chap. 110, pars. 13.3, 16 and 17.) Their contention that the city of Alton is not a proper party plaintiff is also without merit. The bridge facility was constructed and operated under franchises presumably from the city of Alton, St. Charles County, and the States of Illinois and Missouri, as well as under Congressional authorization, and it is self-evident that the city is a proper party to complain of any abuse of its franchise privileges.

The jurisdiction of the city court of Alton is further attacked on the ground that the State of Missouri is an indispensable party by virtue of its contractual rights to the toll bridge facility. The State of Missouri was not a party to the proceeding, and therefore cannot be directly affected by the decree. A writ of *mandamus* need not issue to establish this principle of law. The question remains, however, whether the State's absence voids the jurisdiction of the court. We believe the language of the United States Supreme Court in *Cunningham* v. *Macon and Brunswick Railroad Co.* 109 U.S. 446, 27 L. ed. 992, to be pertinent here. Mr. Justice Miller, speaking for the court stated, at p. 450:

"In the suits which have been instituted in the circuit courts the effort has been, while acknowledging the incapacity of those courts to assume jurisdiction of a State as a party, to proceed in such a manner against the officers

or agents of the State Government, or against property of the State in their hands, that relief can be had without making the State a party.

* * *

"It may be accepted as a point of departure unquestioned, that neither a State nor the United States can be sued as defendant in any court in this country without their consent, except in the limited class of cases in which a State may be made a party in the Supreme Court of the United States by virtue of the original jurisdiction conferred on that court by the Constitution.

"This principle is conceded in all the cases, and whenever it can be clearly seen that the State is an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction. But in the desire to do that justice, which in many cases the courts can see will be defeated by an unwarranted extension of this principle, they have in some instances gone a long way in holding the State not to be a necessary party, though some interest of hers may be more or less affected by the decision. In many of these cases the action of the court has been based upon principles whose soundness cannot be disputed. A reference to a few of them may enlighten us in regard to the case now under consideration:

"1. It has been held in a class of cases where property of the State, or property in which the State has an interest, comes before the court and under its control, in the regular course of judicial administration, without being forcibly taken from the possession of the government, the court will proceed to discharge its duty in regard to that property. And the State, if it choose to come in as plaintiff, as in prize cases, or to intervene in other cases when she may have a lien or other claim on the property, will be permitted to do so, but subject to the rule that her rights will receive the

same consideration as any other party interested in the matter, and be subjected in like manner to the judgment of the court."

These principles are applicable here. At the time of filing the suit in the city court of Alton, the State of Missouri had no legal title to the land in question, nor was it in control of the facility. The jurisdiction of the court must be determined as of the commencement of the action. (*Pennoyer* v. *Neff*, 95 U.S. 714, 24 L. ed. 565.) The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry and not whether its decision is right or wrong. (*Welch* v. *Focht*, 67 Okla. 275, 171 Pac. 730; *Tube City Min. & Mill. Co.* v. *Otterson*, 16 Ariz. 305, 146 Pac. 203; 14 Am. Jur. (Courts), sec. 168, par. 368.) At the time of the institution of this action, the State of Missouri did not own or manage property within this State, nor did it engage in other activities that would make it amenable to process. Since the State of Missouri was beyond the jurisdiction of the court, the city court of Alton as a duly constituted court of equity could, with justification, hold the State not a necessary party and adjudicate the case on the merits, without prejudice to its interest. (*Bourdieu* v. *Pacific Western Oil Co.* 299 U.S. 65, 70, 81 L. ed. 42, 45; *Elmendorf* v. *Taylor*, 10 Wheat. 152, 167, 168, 6 L. ed 289, 294.) Mr. Justice Caton in *Webster* v. *French*, 11 Ill. 254, at 271 and 272, adequately considered this problem and stated: "It is said that the state is interested, and that it is a fatal objection that she is not a party. That the interest of the state may be incidentally, if not directly, affected by the decree in this case, is undoubtedly true. As a general rule all parties interested in the *object* of the suit must be made parties, before the Court will proceed to its final determination. This rule, however, is not an arbitrary or inflexible one, but is adopted as a matter of convenience, and for the purpose of promoting the ends of justice, and whenever its application would de-

feat those ends, the rule must generally give way. 1 Story's Eq. Pl., sec. 77. Many instances are to be found where the rule has been dispensed with, on account of the great inconvenience and delay which it would occasion, although there was a possibility of its being complied with. How much more readily, then, should we admit an exception where there is an absolute impossibility of its being complied with. Here the state cannot be made a party. She shields herself behind her sovereignty, and refuse[s] to allow herself to be brought into Court."

Under the existing facts, the State of Missouri could not be bound by the decree of the city court of Alton, yet it could come into that court and assert any claim it might have in either the property or the funds in the hands of the receiver. (Cf. *Clark* v. *Barnard*, 108 U.S. 436, 27 L. ed. 780.) The extent and nature of its claim could then be determined in an orderly and regular procedure. We know of no principle or precept which prevents a duly constituted State court from exercising jurisdiction over land within its territorial limits because of the existence of an outstanding contractual interest therein in some person or entity beyond its jurisdiction. Petitioners seem more to seek the abnegation by Illinois of its own sovereignty than the comitous recognition of the sovereignty of Missouri.

We therefore conclude, without determining whether there is error in the decree or orders of the city court of Alton, that it had jurisdiction of the subject matter and the parties defendant and that the issuance of an injunction and the appointment of a receiver were within its jurisdiction.

It appears from this record, and it is apparently conceded, that the owner and operator of the bridge facility was authorized to collect tolls for the improvement of the approaches to the bridge in the city of Alton and for the maintenance of the bridge. The decree or orders of the city court of Alton cannot vest the receiver with any greater power or authority over the bridge than its owner possessed.

The propriety of orders or decrees which authorize allegedly illegal acts of the receiver, or invest him with additional authority to determine claims or liens asserted against the property, as well as other pertinent questions, would be within the purview of a proper appeal, but they cannot be adjudicated in this *mandamus* proceeding.

The writ of *mandamus* cannot be used as a substitute for an appeal or to correct judicial error. (*People ex rel. Furlong* v. *Board of Election Commissioners*, 404 Ill. 326, 330; *People ex rel. Carlstrom* v. *Shurtleff*, 355 Ill. 210, 216.) It is a proper remedy to expunge void orders, does not issue as a matter of right, (*People ex rel. Furlong* v. *Board of Election Commissioners*, 404 Ill. 326,) and should be awarded only in the exercise of sound judicial discretion in accord with legal principles, (*People ex rel. Cannella* v. *City of Chicago*, 7 Ill.2d 416,) and only where the plaintiff establishes a clear right to this extraordinary remedy. *People ex rel. Pignatelli* v. *Ward*, 404 Ill. 240.

We therefore conclude that the petition for the writ must be denied.

*Writ denied.*