ILLINOIS STATE EMPLOYEES ASSOCIATION *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES, State of Illinois, *et al.*, Defendants-Appellants.

Fourth District   No. 4—88—0344

Opinion filed January 19, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellants.

John M. Hosteny, of Cavanagh, Hosteny & O'Hara, of Springfield, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On September 2, 1987, plaintiffs Illinois State Employees Association (ISEA), Carl Culver, and Henry Williams brought suit in the circuit court of Sangamon County against defendants the Department of Children and Family Services, State of Illinois (DCFS), the Department of Central Management Services, State of Illinois (CMS), and their respective directors. Plaintiffs contended DCFS was illegally contracting for security services and requested a declaratory judgment that the practice was illegal and injunctive relief against continuation of the policy. After issue was drawn, the case was tried at bench upon stipulated facts. On April 15, 1988, the court entered a judgment declaring that DCFS exceeded its authority in entering into a contract for such services and permanently enjoining defendants from entering into such contracts.

Defendants have appealed, contending (1) DCFS had power to enter into the contracts to which complaint was made; and (2) the circuit court lacked subject matter jurisdiction, because the complaint failed to state a cause of action for either injunctive or declaratory relief. We conclude DCFS had authority to enter into the contracts alleged and, accordingly, reverse.

The major thrust of plaintiffs' theory of recovery and the major reasons for the court's decision is that section 65.2 of the Civil Administrative Code of Illinois (Code) (Ill. Rev. Stat. 1987, ch. 127, par. 63b11.2) prohibits DCFS from contracting for the performance of security services by persons who are not State employees. That section states that DCFS has the power:

"'To appoint, subject to the 'Personnel Code', persons to be members of a police and security force. Members of the police and security force shall be peace officers and as such have all powers possessed by policemen in cities, and sheriffs, including the power to make arrests on view or warrants of violations of

state statutes or city or county ordinances. These powers may, however, be exercised only in counties of more than 500,000 population when required for the protection of Department properties, interests and personnel, or specifically requested by appropriate state or local law enforcement officials. Members of the police and security force may not serve and execute civil processes." Ill. Rev. Stat. 1987, ch. 127, par. 63b11.2.

Admirably, the parties stipulated to the following pertinent facts. Culver and Williams were employed by DCFS as security officers with certified status under the Personnel Code (Ill. Rev. Stat. 1987, ch. 127, par. 63b101 *et seq.*) from 1980 until they were laid off in 1987. They were working at facilities in Cook County, working daytime shifts exclusive of weekends and holidays. Since 1983, DCFS had contracted with private agencies for the performance of security services at night and on weekends, and holidays. At the time of layoff, the wages paid to Culver and Williams approximated $10 per hour, while the agencies contracting with DCFS for security services were paid at an approximate rate of $6.40 per person per hour. Shortage of funds was the reason cited by DCFS for the layoff. The daytime positions of the plaintiffs laid off have not been filled and personnel of the security services under contract have not performed those functions.

The parties agreed that the services performed by the personnel of the contracting agencies could have been performed by security officers employed by DCFS. The parties also agree that neither Culver, Williams, nor employees of the contracting agencies have been peace officers with special powers to arrest and that none of the latter employees had certified status under the Personnel Code (Ill. Rev. Stat. 1987, ch. 127, par. 63b101 *et seq.*).

■ The record is not clear as to whether DCFS has ever created "a police and security force" with members having the powers of peace officers. The parties agree that DCFS has created "the position classification of Security Officer." On the other hand, as we have indicated, they have agreed that Culver and Williams were never given peace officer powers. However, we do not deem this question to be determinative. We conclude that section 65.2 of the Code does not preclude DCFS from contracting for security services regardless of the formation of a "police and security force."

Several statutory provisions have been enacted to give peace officer powers to certain (1) employees of airport authorities (Ill. Rev. Stat. 1987, ch. 15½, par. 68.8—12); (2) Revenue Department investigators (Ill. Rev. Stat. 1987, ch. 127, par. 39b15.1); (3) employees of the office of the State Fire Marshall (Ill. Rev. Stat. 1987, ch. 127½,

par. 501); (4) employees of the Department of Conservation (Ill. Rev. Stat. 1987, ch. 61, par. 1.15); (5) persons working in Cook County hospitals (Ill. Rev. Stat. 1987, ch. 34, par. 911); and (6) employees of the University of Illinois (Ill. Rev. Stat. 1987, ch. 144, par. 28). In each case the statute places some limitation upon the exercise of the employees' use of peace officer powers that an ordinary police officer, sheriff, or deputy sheriff would not have.

The obvious purpose of the foregoing legislation as well as section 65.2 is to enable the various departments and units of government to have the benefit of some of their employees possessing limited powers of a peace officer. The language used does not expressly or impliedly prohibit the use by the governmental agencies involved of other personnel to perform services which bear on security. Apparently, Culver and Williams operated in this capacity while working as security officers without powers of a peace officer. Just as the language does not prevent such persons performing such functions as that of a night watchman without being part of a "police and security force," the language neither expressly nor impliedly prohibits the hiring of a private entity to furnish people to perform those services.

Section 65.2 of the Code requires that persons appointed to the "police and security force" be appointed "subject to the Personnel Code." (Ill. Rev. Stat. 1987, ch. 127, par. 63b11.2.) A logical explanation for that language is to make clear that the appropriate civil service procedure applicable to the "police and security force" is not that of "An Act in relation to the Department of State Police" (Ill. Rev. Stat. 1987, ch. 121, par. 307.1 *et seq.*) but the Personnel Code, from which State police are exempt (Ill. Rev. Stat. 1987, ch. 127, par. 63b104c(10)). This provision also neither expressly nor impliedly prohibits the hiring of a private agency to perform security service by the use of persons not certified under the Personnel Code.

Our determination that section 65.2 of the Code does not preclude the contracting for services involved here does not completely answer the question of whether DCFS had the power to enter into the instant contract.

■ Defendants call our attention to section 6—3 of the Illinois Purchasing Act, which states:

"In any service contract in excess of $2,000, or in excess of $200 per month, all services furnished under contracts awarded under this Act shall be performed by employees [of the bidders] receiving the prevailing wage rate and working under conditions prevalent in the locality in which the work is produced ***."

Collective bargaining agreements between state employees and the State of Illinois shall not be taken into account by the Department of Labor in determining the prevailing wage rate.

As used in this section, 'services' means janitorial cleaning services, window cleaning services, food services and *security services.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 127, par. 132.6—3.)

Defendants argue this provision gives DCFS authority to contract for security services. We do not agree. In *Inskip v. Board of Trustees* (1962), 26 Ill. 2d 501, 187 N.E.2d 201, the court held that the Illinois Purchasing Act did not determine whether a State entity was required to contract to build a particular project or to do the work with its own employees. Rather, the court concluded that the legislation provided for the procedure to be followed if the decision were made to contract for the work. Similarly, here, section 6—3 of the Illinois Purchasing Act does not determine whether DCFS has the power to contract for security services but sets forth the procedure to be followed if that power exists.

While section 6—3 of the Illinois Purchasing Act does not give DCFS authority to contract for security services, it is a legislative recognition of the existence of that power in some State departments or agencies. As defendants have pointed out, section 6 of article XXVII of the collective-bargaining agreement between ISEA and the State of Illinois provides for procedures when the State contracts out work performed by bargaining unit employees. Likewise, this does not give DCFS power to contract for services, but it is evidence of a recognition by the parties that the power exists under some circumstances.

■ The provisions of the Code giving power to DCFS (Ill. Rev. Stat. 1987, ch. 127, par. 63b11 *et seq.*) give that entity no express power to contract for services from a private entity. However, neither party has shown us express statutory authority for other departments or agencies to contract for services, and we have not found such express statutory authority. Yet, section 6—3 of the Illinois Purchasing Act recognizes the existence of that authority. Under rules prescribed for State purchasing, CMS is charged with the contracting responsibility on behalf of all agencies for certain enumerated items, among which security services are not mentioned. (44 Ill. Adm. Code 1.310 (Supp. Jan. 1, 1987).) Those same rules state that "[c]ontracts for service needs not covered in the preceding sections are the responsibility of each agency unless otherwise provided by law." (44 Ill. Adm. Code 1.340 (1985).) Accordingly, we hold that under DCFS' general author-

ity to perform its statutory functions, it had power to enter into the instant contract.

■■ ■ We do not agree with defendants that the circuit court lacked subject matter jurisdiction in this case. Pursuant to its constitutional grant of power, the circuit court has jurisdiction of "all justiciable matters" with exceptions not applicable here. (Ill. Const. 1970, art. VI, §9.) A request for an injunction is a "justiciable" matter. Grant of the relief requested would not have violated the statutory sovereign immunity of the State if plaintiffs' interpretation of section 65.2 of the Code is correct. (Ill. Rev. Stat. 1987, ch. 127, par. 801.) Actions for declaratory or injunctive relief against State agencies or officials are not barred when taken to prevent actions by such defendants which are absolutely beyond their lawful power. *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 384 N.E.2d 310; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223.

Rather than attacking the jurisdiction of the circuit court, defendants appear to be arguing that plaintiffs needed to show an exhaustion of their administrative remedies or those under the collective-bargaining agreement in order to have a cause of action. As we are reversing, we need not delve into this complicated issue. However, relief in equity has been held to be obtained without exhaustion of administrative remedies when a governmental body operates under an invalid rule. *Bio-Medical Laboratories, Inc.*, 68 Ill. 2d 540, 370 N.E.2d 223; *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258.

The judgment from which appeal is taken is reversed and the permanent injunction is ordered dissolved.

Reversed; injunction dissolved.

McCULLOUGH, P.J., and KNECHT, J., concur.