KUHN, J.
Pursuant to these consolidated appeals, we review a judgment in which the trial court determined that it lacked subject matter jurisdiction to resolve a dispute. The trial court also implicitly granted the defendant’s motion to dismiss by transferring plaintiffs’ suit to our sister state of Illinois. In one of the appeals, we conclude that the appeal was taken from an invalid judgment and that we have no jurisdiction to review it. In the other appeal, we address whether the trial court abused its discretion in declining to exercise jurisdiction over a sister state’s university board based on principles of interstate comity. We find that Illinois is a cooperative jurisdiction that has previously honored a sister state’s reservation of sovereign immunity by declining to exercise jurisdiction and would likely do the same if a Louisiana university board defended a suit on the basis of sovereign immunity. We likewise find that declining jurisdiction in this instance does not contravene the public or judicial policies of our state. Thus, we conclude the trial court did not abuse its discretion in declining to exercise jurisdiction.
I. FACTUAL AND PROCEDURAL BACKGROUND
This appeal arises from two consolidated suits brought by plaintiffs-appellants con *614 cerning tickets that they ordered through the University of Illinois Athletic Ticket Office (“the Illinois Ticket Office”) for the January 1, 2002 Nokia Sugar Bowl Game. The Bowl Game featured Louisiana State University (“LSU”) versus the University of Illinois and was played in New Orleans, Louisiana.
Prior to the game, plaintiffs, most of who resided in Louisiana, realized that they might improve their chances of securing tickets for the Sugar Bowl game by attempting to purchase some of the 15,000 tickets that had been allotted to the | ¡¡University of Illinois for sale. The Illinois Ticket Office began selling these tickets during December 2001. Between approximately December 4th and December 10th, plaintiffs each ordered a number of tickets through the Illinois Ticket Office via its online website or via the telephone. With respect to the online transactions, plaintiffs alleged that the Illinois Ticket Office charged each respective purchaser’s credit or debit card and then confirmed the ticket purchase by sending a confirmation to each purchaser’s e-mail address. In the case of at least one telephone transaction, the plaintiffs-appellants assert that a ticket office representative assured the respective purchaser that the tickets would be mailed after taking his name, address, and credit card information. Several days later, the Illinois Ticket Office informed the individual plaintiffs either through an e-mail transmission or by telephone that because there was a high demand for Sugar Bowl tickets from donors of the Fighting Illini Scholarship Fund and public and student football season ticket holders, plaintiffs’ requests for Sugar Bowl tickets would not be accommodated. The Illinois Ticket Office reversed the respective credit or debit card transactions.[1]
On December 19, 2001, plaintiffs filed two suits that proposed the formation of a class of plaintiffs and set forth breach of contract claims against defendant- | ¿appellee, The Board of Trustees of the University of Illinois (“the Board”).[2] Martin Levert, Karen Leboef, Ann Rasmussen, and Kamron Lachney were the named plaintiffs in the suit filed first (hereinafter referred to as the “Levert” suit). Rusty Landeche, R. Bruce Macmurdo, Ricardo Torres, Jr., Henry Lazzaro, Charles S. McCowan, III, and Ellis Sehwartzenburg were the named plaintiffs in the second suit (hereinafter referred to as the “Lan-deche” suit).[3] In each suit, the named plaintiffs sought mandatory injunctive relief ordering the Board to produce the Sugar Bowl tickets that each plaintiff had ordered. Alternatively, the plaintiffs prayed for compensatory damages result *615 ing from the Board’s alleged breach of contract.
When the suits were filed, the trial court ordered their consolidation. Thereafter, plaintiffs filed a motion to certify the suit for class action treatment, defining the proposed class as “[a]ll individuals or entities who purchased 2002 Sugar Bowl football tickets through [the Ticket Office], and have not received or have been advised by [the Ticket Office] that they will not receive their 2002 Sugar Bowl tickets.”
During a December 27, 2001 hearing, the trial court denied plaintiffs’ motion for certification but granted mandatory in-junctive relief in favor of the named | plaintiffs by awarding a specific number of tickets to each of them.[4] The Board was directed to provide the named plaintiffs with a designated number of Sugar Bowl football tickets for purchase within 24 hours. Although a written judgment was not signed until after the game was held, there is no dispute that the named plaintiffs secured the tickets addressed in the ruling.
On March 8, 2002, plaintiffs in each suit filed an amending and supplemental petition. The Landeche suit was amended to substitute 6 new plaintiffs in lieu of the plaintiffs named originally.[5] The Levert suit was amended to add 5 plaintiffs asserting breach of contract claims.[6] Each of these plaintiffs set forth breach of contract claims based on allegations that tickets they had ordered from the Illinois Ticket Office were never received.
Thereafter, the Board filed a pleading pertaining to both suits that was entitled, “Defendant’s Exception of Lack Of Subject Matter Jurisdiction, or | (Alternative Motion to Dismiss, on Grounds of Sovereign Immunity and Comity .... ” The arguments supporting both the exception and the motion to dismiss were based on grounds of sovereign immunity and comity. The Board asserted that based on the Illinois Court of Claims Act, both the Board and the University of Illinois are arms of the State of Illinois for purposes of sovereign immunity and can only be sued in the Illinois Court of Claims.[7] The Board urged that under principles of comity, the trial court should defer to Illinois’s law concerning sovereign immunity and *616 exclusive jurisdiction and dismiss plaintiffs’ claims. Following a hearing, the trial court orally reasoned that based on principles of comity and sovereign immunity, the remaining issues of the lawsuits should be adjudicated in Illinois’s Court of Claims. By judgment dated September 18, 2002, the trial court granted the Board’s exception as to both suits and further ordered, “Plaintiffs’ suit (sic) shall be transferred to the Illinois Court of Claims for further proceedings.” Plaintiffs in each suit have appealed this judgment, asserting that the trial court abused its discretion in: 1) finding that “principles of comity and sovereign immunity divested the Courts in Louisiana from subject matter jurisdiction,” and 2) “ ‘transferring’ this case to the Illinois Court of Claims for further proceedings.”
II. ANALYSIS
Because we do not reach the same conclusion in each suit regarding the propriety of the trial court’s judgment, we review the September 18, 2002 judgment with respect to each suit.
|7A. The Landeche Suit
(Docket Number 2002 CA 2680)
With respect to the Landeche suit, we conclude that the trial court had signed a final judgment prior to the time that it ruled on the exception and alternative motion to dismiss. Because the trial court had no jurisdiction to rule on either the exception or the motion, the September 18, 2002 judgment is null and we have no jurisdiction to review it.
A judgment that determines all of the relief prayed for is a final judgment. La. C.C.P. arts. 1841 and 1915. A valid and final judgment is conclusive between the same parties, except on appeal or other direct review. La. R.S. 13:4231; Avenue Plaza, L.L.C. v. Falgoust, 96-0173, p. 4 (La.7/2/96), 676 So.2d 1077, 1079.
In the Landeche case, all of the issues presented to the court were resolved by the January 9, 2002 order. The original plaintiffs in the Landeche suit prayed for an order directing defendants to provide them with tickets to the Sugar Bowl game. Alternatively, they prayed for damages that resulted from the Board’s alleged breach of contract. Lan-deche prayed for and was awarded 10 tickets; Macmurdo prayed for and was awarded 3 tickets; Torres prayed for and was awarded 2 tickets; Lazzaro prayed for and was awarded 4 tickets; McCowan prayed for and was awarded 8 tickets; Schwart-zenburg prayed for and was awarded 4 tickets. Because plaintiffs’ prayer for in-junctive relief was fully answered, there was no reason for the trial court to reach the alternative breach of contract claim.
Although the original and supplementing petitions referred to a purported class action, a motion to certify the class had been denied by the trial court on December 27, 2001. Thus, when the January 9, 2002 order granting the injunctive | ¡¡relief was signed, no class had been certified and no motion for class certification was pending. Once the January 9, 2002 order was signed, there were no outstanding claims before the court. And the January 9, 2002 order, which awarded plaintiffs full relief as prayed for in their petition, was a final judgment.
Thereafter, however, plaintiffs filed a second amending and supplemental petition that substituted new plaintiffs who had ordered tickets from the Illinois Ticket Office but had not successfully obtained them. Those plaintiffs urged breach of contract claims. But because a final judgment had already been rendered and signed, the filing of the supplemental and amending petition had no effect. General *617 ly, once a final judgment has been rendered, there can be no amended petition because there is no longer a petition before the court to amend. La. Riverboat Gaming Comm’n v. La. State Police Riverboat Gaming Enforcement Div., 97-0167, p. 3 (La.App. 1st Cir.6/20/97), 696 So.2d 645, 647, writ denied, 97-1932 (La.11/7/97), 703 So.2d 1269; Templet v. Johns, 417 So.2d 433, 435 (La.App. 1st Cir.1982), writ denied, 420 So.2d 981 (La.1982), and cases cited therein. A plaintiff can only amend a petition that is pending at the time the amendment is filed. Id. at 435.
Likewise, after the January 9, 2002 order was signed, the court had no jurisdictional authority to rule on either the exception or the motion to dismiss filed by the Board. See Diamond B Const. Co., Inc. v. Dep’t of Transp. and Development, 02-0573, p. 9 (La.App. 1st Cir.2/14/03), 845 So.2d 429, 435. Thus, the September 18, 2002 judgment, which sustained the exception of lack of subject matter jurisdiction, was invalid with respect to the Landeche suit. The Landeche plaintiffs have appealed this invalid judgment. Because a motion for appeal from an | ¡¡invalid judgment is considered untimely, and this court lacks jurisdiction to hear an untimely appeal, we recognize that with respect to- the Lan-deche suit, we have no jurisdiction to review the trial court’s judgment. Avants v. Kennedy, 02-0830, p. 9 (La.App. 1st Cir.12/20/02), 837 So.2d 647, 654, writ denied, 03-0203 (La.4/4/03), 840 So.2d 1215. Accordingly, we dismiss the appeal with respect to the Landeche suit. La. C.C.P. art. 2162.
B. The Levert Suit
(Docket Number 2002 CA 2679)
With respect to the Levert suit, the plaintiffs also requested injunctive relief in the form of tickets and, alternatively, prayed for damages resulting from breach of contract. The January 9, 2002 order directed the Board to provide tickets to each of the plaintiffs that had been named in the original and first supplemental and amending petitions. However, although one of the plaintiffs, Ann Rasmussen, prayed for 8 tickets, the January 9, 2002 order directed the Board to deliver only 6 tickets to her. Although the record does not explain why she did not receive the full number of tickets that she sought, the result is that her alternative claim for breach of contract remained viable after the January 9, 2002 order. Thus, the trial court had authority to allow amendment of the pleadings and to rule on the Board’s exception and motion. Accordingly, we review the propriety of the September 18, 2002 judgment with respect to the Levert suit.
The trial court’s judgment granted the Board’s exception raising the objection of lack of subject matter jurisdiction. By ordering the suit’s transfer to the State of Illinois, the trial court also implicitly granted the Board’s motion to dismiss. In its oral reasons for judgment, the trial court recognized principles of comity and Imsovereign immunity and determined that the remaining issues of the lawsuit should be adjudicated in Illinois’s Court of Claims. But the court did not expressly distinguish the concepts of lack of subject matter jurisdiction and declining to exercise jurisdiction based on principles of comity. We believe it is important to do so.
i. Subject Matter Jurisdiction
Louisiana Constitution, Article 5, Section 16(A)(1), addressing the original jurisdiction of our state’s district courts, provides in pertinent part, “Except as otherwise authorized by this constitution or except as ... provided by law ... a district court shall have original jurisdiction *618 of all civil ... matters.” Louisiana Code of Civil Procedure article 1 provides, “Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled.” Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties. La. C.C.P. art. 3.
The claim that remained before the trial court when it ruled on the exception was a breach of contract claim. A cause of action alleging breach of contract, regardless of the contract’s subject matter, is a civil matter subject to the jurisdiction of the trial court. A & L Energy, Inc. v. Pegasus Group, 00-3255, p. 12 (La.6/29/01), 791 So.2d 1266, 1275, cert. denied, 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001). As such, the trial court incorrectly determined that it lacked subject matter jurisdiction. Therefore, we vacate that portion of the trial court’s judgment that granted the exception.
The trial court also ordered the transfer of the suit to the Illinois Court of Claims. Therefore, we recognize that the real dispute presented herein is whether the trial court abused its discretion in implicitly granting the Board’s motion to dismiss by deciding that jurisdiction should be declined based on principles of comity. Accordingly, we address that issue.[8]
ii. Comity
Comity is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect. Lee v. Miller County, Arkansas, 800 F.2d 1372, 1375 (5th Cir.1986). Courts extend immunity as a matter of comity to foster cooperation, promote harmony, and build goodwill. Id. Because the doctrine is a discretionary one, the decision to extend comity rests in the sound discretion of the trial court. Id. at 1376; Mianecki v. Second Jud. Dist. Ct., 99 Nev. 93, 98, 658 P.2d 422, 425 (1983), cert. dismissed, 464 U.S. 806, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Thus, we conclude that a court’s determination to extend immunity to a sister sovereign should not be overturned in the absence of an abuse of the trial court’s discretion.
liyWith a few exceptions, the State of Illinois’s legislature has established sovereign immunity by providing that “the State of Illinois shall not be made a defendant or party in any court.” IL ST CH 745 § 5/1. One exception is that the Court of Claims has “exclusive jurisdiction to hear and determine ... claims against the State that are founded upon any contract entered into with the State of Illinois.” IL ST CH 705 § 60678(b).
*619 The Levert appellants contend the trial court abused its discretion in recognizing the State of Illinois’s sovereign immunity and by declining jurisdiction based on principles of comity. Appellants posit that under Nevada v. Hall, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), a court can assert jurisdiction over another state despite its laws regarding sovereign immunity. Appellants further argue that no constitutional or statutory prohibitions prevented the trial court from rejecting Illinois’ claims of sovereign immunity.
Appellees assert that because the University of Illinois is subject to possible financial liability based on plaintiffs’ alleged contractual obligations, the trial court properly found these claims should be adjudicated in the Illinois Court of Claims. Appellees urge that in declining jurisdiction and abstaining from hearing these claims, the trial court properly applied accepted principles of comity and sovereign immunity. Appellees contend that appellants’ reliance on the Hall case is misplaced.
In Hall, California residents filed suit in a California state court seeking damages against the State of Nevada and others for injuries they sustained in a collision that occurred on a California highway. The collision involved a Nevada-owned vehicle that was engaged in official business. Because the State of California had waived its own immunity from liability and permitted full recovery against itself in similar circumstances, the California state court denied the State of Nevada’s claims of immunity and awarded damages in plaintiffs’ favor. 440 U.S. at 412-413, 424, 99 S.Ct. 1182.
The United States Supreme Court granted the State of Nevada’s writ of cer-tiorari and addressed the issue of state sovereign immunity asserted on the basis of the eleventh amendment, full faith and credit, and comity. First, the Hall court held that the eleventh amendment does not prohibit one state from asserting jurisdiction over another state. Nevada v. Hall, 440 U.S. at 420-421, 99 S.Ct. 1182. Second, the Hall Court found that the full faith and credit clause does not require the forum state to apply another state’s sovereign immunity law in violation of its own legitimate public policy. Nevada v. Hall, 440 U.S. at 422-424, 99 S.Ct. 1182. Lastly, the Hall Court found that although a state may recognize another state’s sovereign immunity based on comity, it is not constitutionally mandated to do so. Nevada v. Hall, 440 U.S. at 426, 99 S.Ct. 1182.
Responding to appellant’s arguments, we note that the Hall holding addressed whether a state could refuse to extend immunity rather than whether a state court should refuse to extend immunity as a matter of comity. But in addressing the issues presented, the Supreme Court also encouraged the states to afford each other immunity:
It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so.
Nevada v. Hall, 440 U.S. at 426, 99 S.Ct. 1182.
Because comity is grounded in cooperation and mutuality and encourages amiable and respectful relations among the states, Louisiana should extend comity by recognizing the laws and judicial decisions of other states unless: 1) the foreign state declines to extend comity to Louisiana or sister states under the same or similar circumstances; or 2) the foreign law produces a result in violation of Louisiana’s own legitimate public policy. See Hawsey v. Louisiana Dep’t of Social Services, 934 S.W.2d 723, 726 (TexApp. 1st Dist. 1996).
*620 The jurisprudence of both Louisiana and Illinois demonstrates that both jurisdictions are cooperative jurisdictions for purposes of applying comity. Although we have found no Louisiana case wherein a sister state has requested that our state decline jurisdiction based on comity, Louisiana has extended comity to other states by recognizing and applying the laws of another state. See, e.g., Succession of Fisher, 235 La. 263, 103 So.2d 276, 281 (1958); Fisher v. Bullington, 223 La. 368, 65 So.2d 880, 882 (1953).[9] Examining Illinois’s jurisprudence, we find that Illinois has routinely honored the sovereign immunity of a sister state in circumstances involving alleged negligence by an Indiana state agency causing injury to an individual in Illinois. See Schoeberlein v. Purdue University, 129 Ill.2d 372, 135 Ill.Dec. 787, 544 N.E.2d 283 (5/17/89); King v. Northern Indiana Commuter Transp. Dist., 337 Ill.App.3d 52, 785 N.E.2d 35, 271 Ill.Dec. 384 (1st Dist. 1/13/03), writ denied, 203 Ill.2d 548, 273 Ill.Dec. 138, 788 N.E.2d 729 (4/2/03); Grabarczyk v. Chicago and South Shore R.R., 279 Ill.App.3d 208, 215 Ill.Dec. 748, 664 N.E.2d 145 (1st Dist.3/26/96), writ denied, 167 Ill.2d 552, 217 Ill.Dec. 664, 667 N.E.2d 1057 (6/5/96). In declining jurisdiction, the IUinois courts found that recognizing the sister state’s sovereign immunity was consistent with the policies of Illinois’s constitution. King, 337 Ill.App.3d at 57, 271 Ill.Dec. at 384, 785 N.E.2d at 39.[10] In so concluding, the Schoeberlein court noted:
[T]he generaUy accepted rationale of the States that have not, through comity, accepted another State’s claim of sovereign immunity is that a sister State’s claim of immunity will not be recognized if the forum of litigation permits recovery against the home State under similar circumstances.
Schoeberlein, 129 Ill.2d at 384, 135 Ill.Dec. 792, 544 N.E.2d 288.
Because there is no basis for the State of Illinois to conclude that we would not honor its immunity provisions in reciprocal fashion and because the State of Illinois has previously declined to exercise jurisdiction over another sister state based on principles of comity and sovereign immunity, we find that Illinois would likely | ^recognize the State of Louisiana’s sovereign immunity provisions if presented with a suit involving circumstances similar to *621 the present one.[11]
States that have rejected sister state’s claims of sovereign immunity have largely done so because they find that extending immunity would do violence to the public policy of the forum state. See Lee v. Miller County, Arkansas, 800 F.2d at 1378. In that vein, appellants contend that by honoring Illinois’s reservation of sovereign immunity, Louisiana’s public policy is violated. They argue that if this state declines jurisdiction, appellants may be deprived of the availability of pursuing their claims through a class action procedure. They assert that because the availability of the class action procedure in the Illinois Court of Claims is “at best unsettled,” the trial court should have maintained jurisdiction to insure that this procedure was available to them.[12] Appellees also assert they will be deprived of an opportunity to appeal since Illinois’s laws do not provide for appeals from decisions of the Court of Claims.[13]
Although it may ultimately be determined that the Illinois Court of Claims will not permit appellants to proceed via a class action, we conclude that the policy | t supporting comity outweighs any resulting detriment to appellants. One state’s law does not violate another state’s public policy merely because the laws of the two states differ. Delhomme Industries, Inc. v. Houston Beechcraft, Inc., 669 F.2d 1049, 1058 (5th Cir.1982). Consequently, a mere disparity in the laws, particularly when the disparity involves procedural law, does not preclude enforcement of the other sovereign’s law. See Lee v. Miller County, Arkansas, 800 F.2d at 1375 and Matter of Axona Intern. Credit & Commerce Ltd., 88 B.R. 597 (S.D.N.Y.7/8/88), affirmed, 115 B.R. 442 (S.D.N.Y.5/11/90).
In the present case, even if this suit were to proceed in a Louisiana forum, appellants have not yet established that they are entitled to proceed via a class action proceeding. Thus, appellants have not demonstrated that the differences in the laws of each state are consequential much less violative of this state’s public policy. Additionally, even if we assume that appellants would be entitled to proceed via a class action proceeding, we agree with appellee’s assertion that Louisiana’s procedural laws on class actions do not equate to a strong public policy that would require the State of Louisiana to deny Illinois’ request for recognition of its sovereign immunity. Although the possible lack of a class action procedure and the lack of a right to appeal the Court of Claims’ decision may have an adverse ef- *622 feet on these particular plaintiffs, the recognition of Illinois’ sovereign immunity laws in this state does not violate good morals, principles of natural justice, or result in prejudice to the general interests of Louisiana citizens. See Lee v. Miller County, Arkansas, 800 F.2d at 1375. Accordingly, we conclude that, despite the difference in the procedural laws of each state, because plaintiffs/appellants have recourse to individually seek full redress of their claims in Illinois’ Court of Claims, Illinois’s 11 «sovereign immunity law does not violate Louisiana’s public or judicial policies. The trial court did not abuse its discretion by honoring Illinois’s sovereign immunity laws. In reaching that conclusion, we also note the positive effects of reciprocal comity that may result from exercising comity. By extending comity to a sister state, other states will be more likely to honor Louisiana’s sovereign immunity laws when litigation arises within their forums in the future.
For these reasons, we find that the trial court did not abuse its discretion in declining jurisdiction based on principles of comity. The trial court, however, incorrectly concluded that the principles of comity and lack of subject matter jurisdiction were synonymous. Because the trial court actually had subject matter jurisdiction to resolve the breach of contract claims, as explained above, the trial court should not have granted the exception raising the objection of lack of subject matter jurisdiction. Accordingly, we vacate that portion of the judgment. But because we agree with the trial court that principles of comity weigh in favor of recognizing the State of Illinois’s sovereign immunity law, we accordingly render judgment expressly granting defendant’s alternative motion to dismiss on grounds of sovereign immunity and comity.
iii. Propriety of transfer of Levert suit
Pursuant to the September 18, 2002 judgment, the trial court ordered, “plaintiffs’ suit shall be transferred to the Illinois Court of Claims for further proceedings.” Appellants seek to have this order reversed, asserting that a state district court does not have jurisdiction to transfer a matter to a foreign court. Ap-pellees do not challenge appellant’s assertion that there was no basis for the transfer order. At this juncture, they assert, “[I]t is for plaintiffs/appellants to |19determine how to proceed .... ” Thus, because we agree with that assertion, we vacate that portion of the trial court’s judgment that ordered the transfer of plaintiffs’ suit.
CONCLUSION
For the above reasons, we hereby dismiss the appeal of the September 18, 2002 judgment with respect to the Landeche suit (2002 CA 2680). With respect to the Levert suit (2002 CA 2679), we vacate the judgment and render judgment expressly granting defendant’s alternate motion to dismiss on grounds of sovereign immunity and comity. In each suit, appeal costs are assessed against plaintiffs-appellants.
2002 CA 2680: APPEAL DISMISSED.
2002 CA 2679: VACATED AND RENDERED.

.The University of Illinois maintains that its website and other literature it disseminated addressing ticket sedes informed prospective purchasers that ticket sales were subject to a priority allocation with priority being assigned first to I Fund/Fighting Illini Scholarship Fund (FISF) members, second to student, faculty/staff, and general public football season ticket holders who are not I fund/FIS F members, and third to student, faculty/staff, and general public who are not I Fund/FISF members or season ticket holders. The University claims that its online and telephone transactions were not guaranteed and that the University maintained the right to reduce orders or make refunds based on this priority allocation.

. The Levert petition named the University of Illinois at Urbana/Champaign through the Board of Trustees as defendant. For purposes of this opinion, we generally refer to the Board as the defendant.

. The named plaintiffs that are listed include those that were named in the original and amending petitions prior to the trial court’s December 27, 2001 ruling that awarded the preliminary injunctive relief prayed for by the plaintiffs.

.The Board initially raised an exception raising the objection of lack of subject matter jurisdiction. During the December 27, 2001 hearing, the trial court denied the exception insofar as it was asserted relative to the request for preliminary injunctive relief. On January 9, 2002, the trial court signed a written judgment to that effect that also ordered the injunctive relief.
During the hearing on the exception, the trial court acknowledged that the State of Illinois provides that its Court of Claims has exclusive jurisdiction to hear and determine "[a]ll claims against the State founded upon any contract entered into with the State of Illinois.” 705 Ill. Comp. Stat. 505/8. But the court found that Illinois law would not require a request for injunctive relief to be brought in the Illinois Court of Claims, citing Illinois State Employees Assn. v. Dep't of Children and Family Services, 178 Ill.App.3d 712, 127 Ill.Dec. 694, 533 N.E.2d 566 (4 Dist. 1/19/89) and Rockford Memorial Hosp. v. The Dep’t of Human Rights, 272 Ill.App.3d 751, 209 Ill.Dec. 471, 651 N.E.2d 649 (2 Dist 5/31/95), writ denied, 163 Ill.2d 586, 212 Ill. Dec. 437, 657 N.E.2d 638 (10/4/95) (both recognizing exceptions to the Illinois doctrine of sovereign immunity for claims of injunctive relief against state agencies or officials).

. The substituted plaintiffs were Julie Lewis, Sidney Evans, Robert Roussel, Jr., David Thomas, Marshaun Bacon, and Timothy Burke.

. The additional plaintiffs were Roderick Jar-amillo, Patrick Doise, Steve Schexnayder, Mishaux Ballard, and Liza Dottolo.

. The plaintiffs have not challenged the assertion that the Board is considered an arm of the state.

. Pursuant to La. R.S. 13:3201B, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and the Constitution of the United States. An identification of minimum contacts, however, does not determine whether Louisiana should decline jurisdiction based on principles of comity. But a lack of personal jurisdiction would pretermit the need to address the issue of comity. In this case, however, we do not address whether the trial court had personal jurisdiction over the Board because it did not raise an objection challenging lack of personal jurisdiction. Such an objection is waived unless pleaded through the declinatory exception. La. C.C. P. art. 925.

. Our state has also benefited from a sister state's exercise of comity. See Hawsey v. Louisiana Dep’t of Social Services, 934 S.W.2d 723, 726 (Tex.App. 1st Dist.1996), wherein a Texas appellate court concluded that comity was properly extended to the state of Louisiana because its law did not produce a result that violated Texas’s legitimate public policy.

. Appellants cite only one Illinois case, People ex rel. Hoagland v. Streeper, 12 Ill.2d 204, 145 N.E.2d 625 (1957), to support their proposition that Illinois's courts have exercised jurisdiction when faced with a sovereign immunity claim by a sister state. The Schoeberlein court acknowledged that it had previously declined to honor a sovereign immunity claim by the State of Missouri in the Streeper case, but the Schoeberlein court distinguished Streeper on the basis that it involved an “in rem action concerning property located within Illinois.” Schoeberlein v. Purdue University, 129 Ill.2d at 382, 544 N.E.2d at 287, 135 Ill.Dec. at 791 (Ill.1989). The Streeper court had found that "0]and acquired by one State in another is held subject to the laws of the latter ...” stating that "[i]f it were otherwise, the acquisition of land in Illinois by another State would effect a separate island of sovereignty within [Illinois’s] boundaries.” Streeper, 12 Ill.2d at 212-213, 145 N.E.2d at 629 (1957). Since the facts of the present case, do not involve physical property located within the State of Louisiana, we do not find that Streeper presents support for the proposition that Illinois would decline to extend comity to Louisiana if presented with a suit involving circumstances similar to the present case.

. The Louisiana Constitution waives sovereign immunity “from suit and liability in contract or for injury to person or property.” La. Const, art. XII, § 10(A). This waiver is subject to limitations and procedural rules established by the Louisiana legislature. La. Const, art. XII, § 10(C). La. R.S. 13:5106 mandates that "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.” Additionally, La. R.S. 13:5104(A) sets forth that “[a]ll suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitel is located or in the district court having jurisdiction in the parish in which the cause of action arises.”

. In Farrell v. The State of Illinois, 52 Ill.Ct.Cl. 275 (Ill.Ct.Cl.1/10/00), the Illinois Court of Claims pretermitted ruling on the issue of whether it lacked jurisdiction to entertain a class action, but in doing so commented that the issue was unsettled.

. IL ST CH 705 § 505/17 provides, "Any final determination against the claimant on any claim prosecuted as provided in this Act shall forever bar any further claim in the court arising out of the rejected claim.”