**Mark RAMSDEN, Plaintiff-Respondent,**

v.

**STATE OF ILLINOIS, et al.,
Defendants-Appellants.**

**No. 66749.**

Supreme Court of Missouri,
En Banc.

Aug. 7, 1985.

Neil F. Hartigan, Atty. Gen., Patricia Rosen, Susan C. Weidel, Eugene P. Scharittgens, Jr., Asst. Attys. Gen., Chicago, Ill., for defendants-appellants.

Ted L. Perryman, St. Louis, for plaintiff-respondent.

WILLIAM E. TURNAGE, Special Judge.

Mark Ramsden sued Chicago Read Mental Health Center, the Department of Mental Health and Developmental Disabilities, and the State of Illinois for breach of contract and fraudulent misrepresentation. The jury awarded Ramsden $40,000 in actual damages on each claim. The Court of

Appeals, Eastern District, held that the award of damages for fraudulent misrepresentation duplicated the award of damages for breach of contract and affirmed a judgment for $40,000 on the contract claim. This court ordered the cause transferred and it is now considered the same as if on original appeal. Mo. Const. Art. V, § 10. Reversed.

Chicago Read Mental Health Center is owned and operated by the State of Illinois and the parties agree that the State of Illinois is the real party in interest.

Ramsden had been a resident of Illinois but moved to St. Louis to begin work on a Ph.D. Degree. As a part of the requirements for this degree, Ramsden was obligated to spend a year in an approved internship program. Chicago Read, which had an approved internship program, advertised in *The American Psychologist* that it had ten internships available in clinical psychology. Chicago Read followed a national policy of interviewing applicants for its internship program and then notifying those applicants it wished to select on the second Monday in February of each year. Upon Ramsden's application to Chicago Read he was interviewed, and on February 9, 1981, Dr. Adam Fikso, the Director of the Internship Program, notified Ramsden that he had been selected for one of the ten positions at a specified salary and that his internship would begin in September. Ramsden wrote Dr. Fikso within a few days and stated that he accepted the offer for one of the positions.

About a month later, Dr. Fikso learned that the funding for the ten positions would not be available because of state budgetary problems. On March 11, 1981, he notified Ramsden and the others selected that funding was not available and that they would not be hired as interns.

At trial Ramsden testified to his notification by Chicago Read that he had been selected as an intern and that he had accepted. He testified that he turned down two other internship offers to accept the Chicago Read offer.

Ramsden called Dr. Fikso as a witness. On direct examination Dr. Fikso testified concerning the selection process. He stated that he had notified Ramsden of his selection and later notified Ramsden that he would not be hired because of budgetary problems. Dr. Fikso said the February uniform notification date complicated the selection process because in February, the amount of money available for the budget the following September was not known.

On cross-examination Dr. Fikso stated that Ramsden did not have an enforceable employment contract with the State as a result of his notification to Ramsden that he had been accepted into the internship program. Dr. Fikso stated that under Illinois procedures, after Ramsden was accepted as an intern, Dr. Fikso had to obtain an exemption to hire interns because the State had imposed a hiring freeze for the last five years. Dr. Fikso stated that it was difficult to get such an exemption but he had been able to do this in the past. He said it was also necessary to get an exemption for Ramsden because he was not an Illinois resident at the time of his selection. After he had obtained these exemptions, Dr. Fikso would have had to submit to the Department of Personnel Ramsden's application, which Ramsden had partially filled out but had not completed. Dr. Fikso testified that the hiring of state employees was at the discretion of the Department of Personnel under the Illinois Personnel Code.

Dr. Fikso said that Ramsden had not progressed beyond the selection stage because within about a month after Ramsden's selection, Dr. Fikso learned that funding was not going to be available for the internship program. Thus, Dr. Fikso had not obtained the exemptions which would allow Ramsden to be hired by the State, nor had he submitted Ramsden's application to the Department of Personnel. It was Dr. Fikso's testimony that Ramsden did not have an employment contract with the State when he was notified that he would not be hired.[1]

---

**1.** Even if this court were to review this case

under the theory on which it was tried, a review

The case was submitted to the jury on Ramsden's theory that he had a contract of employment when he was notified that he had been selected for the program, and the jury returned the verdicts noted above.

██ The State of Illinois contends that Missouri courts should have declined jurisdiction in this case. Ramsden contends that under *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), Missouri courts may exercise jurisdiction over another state. *Hall* did not find any federal constitutional impediment to a state being sued in the courts of another state. On the other hand, that case certainly does not mandate that a state entertain a suit in its courts against another state. Indeed, the court said that "[i]t may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so." 440 U.S. at 426, 99 S.Ct. at 1191. Thus, the threshold question is whether the courts of this state should exercise their right under *Hall* to assert jurisdiction over the State of Illinois.

Illinois contends that even if the exercise of jurisdiction over the State of Illinois was proper, the Missouri courts should have dismissed this action based on principles of comity. Comity has been defined as being "a matter of courtesy, complaisance, respect—not of right but of deference and good will." *Esmar v. Haeussler,* 341 Mo. 33, 106 S.W.2d 412, 414[6] (1937). In *Ehrlich-Bober & Co. v. University of Houston,* 49 N.Y.2d 574, 427 N.Y.S.2d 604, 608, 404 N.E.2d 726, 730[5] (1980), the court stated:

The doctrine of comity "is not a rule of law, but one of practice, convenience and expediency." It does not of its own force compel a particular course of action. Rather, it is an expression of one

State's entirely voluntary decision to defer to the policy of another. Such a decision may be perceived as promoting uniformity of decision, as encouraging harmony among participants in a system of co-operative federalism, or as merely an expression of hope for reciprocal advantage in some future case in which the interests of the forum are more critical. (citations omitted).

In considering the principles of comity discussed in *Ehrlich,* it is apparent that the promotion of uniformity of decision is especially applicable in this case. Chicago Read had ten internships available. At least Ramsden (and possibly others) lived in states other than Illinois. It would open the door for inconsistent results if the ten interns situated as Ramsden filed suit in different states. Indeed, there could well be different results if only Ramsden tried his case outside of Illinois and the others were tried there. As noted, *see infra* note 2, the law of Illinois is controlling because the only question is whether Ramsden had a binding employment contract at the time he was notified in March that he would not be hired. The only law which can be applied is the law of Illinois, and the courts of Illinois can assure a uniformity of decision on the same fact question.

Further, by declining jurisdiction Missouri can encourage harmony between itself and Illinois in a case which calls for the application of Illinois law. Illinois did not enter Missouri to conduct an activity, but merely cooperated in a national program to make psychology internships available. Ramsden's performance would have been in Illinois. The only interest Missouri has in this controversy is the fact that Ramsden lived here when he filed suit. In determining whether or not to apply comity to defer jurisdiction to Illinois, it must be re-

of the evidence would mandate a reversal of the judgment. Ramsden called Dr. Fikso as his witness and on cross-examination Dr. Fikso stated the requirements which Ramsden had to meet to establish an enforceable employment contract. Ramsden did not produce any contradictory evidence and was thus bound by Dr.

Fikso's evidence whether it was elicited on direct or cross-examination. *Bridle Trail Association v. O'Shanick,* 290 S.W.2d 401, 407[9] (Mo. App.1956). Ramsden failed to prove that he had met the requirements as stated by Dr. Fikso and thus failed to prove the essential element of his case that he had an enforceable contract.

**460**

membered that strong interests are implicated in cases involving a state as a party. One is the interest of a state in governing its own operations, and the other is its interest in preserving the integrity of its fisc. See *The Supreme Court, 1978 Term,* 93 Harv.L.Rev. 60, 196 (1979). It is relevant that Illinois was performing a service for its own citizens, as well as budding psychologists, in its operation of Chicago Read and the internship program. To subject Illinois to a suit in this state in a controversy arising out of the performance of this public service would infringe unnecessarily upon the harmonious relations which are part and parcel of the spirit of co-operative federalism. *Simmons v. State,* 670 P.2d 1371, 1385[22] (Mont.1983).

In a similar situation, Missouri certainly would prefer to have claims litigated against it in its own courts, rather than in the courts of other states with the possibility of diverse results.

Missouri is free to close its courts to suits against a sister state as a matter of comity rather than constitutional command. *Struebin v. State,* 322 N.W.2d 84, 87[3, 4] (Iowa), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982). On principles of comity the trial court should have declined jurisdiction and sustained the motion to dismiss.[2]

The judgment is reversed.

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY, WELLIVER and RENDLEN, JJ., concur.

ROBERTSON, J., not participating because not a member of the Court when cause was submitted.

---

2. Illinois contends that even if the Missouri court properly exercised jurisdiction it erred in applying Missouri, rather than Illinois, substantive law. This case concerns whether Ramsden had an enforceable employment contract with the State of Illinois. The answer to that question depends wholly on Illinois law, not because of the choice of law concept in conflicts of law, but because only Illinois can establish the requirements for becoming an employee of that state. Thus, a Missouri court cannot apply Missouri law to determine that ultimate question, because Missouri law does not set out the requirements for becoming an employee of the State of Illinois. This case does not present a conflicts of law question and the trial court erred when it ruled that Missouri law would be applied to this case.