(No. 66904.—

ALLAN H. SCHOEBERLEIN, Appellee, v. PURDUE UNIVERSITY *et al.*, Appellants.

*Opinion filed May 17, 1989.—Rehearing denied September 29, 1989.*

374

CALVO, J., dissenting.

Kurnik, Cipolla, Stephenson, Barasha & O'Dell, Ltd., of Arlington Heights (Corey P. O'Dell and William W. Kurnik, of counsel), for appellants.

Jon Yambert, of Aurora (Lindner, Speers & Reuland, P.C., of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

In October 1986, appellee Allan Schoeberlein (Schoeberlein), an Illinois resident, filed a products liability suit in the circuit court of Kane County. Schoeberlein alleged that appellants Purdue University and the Board of Trustees of Purdue University (Purdue) sold a defective Central Hadron Calorimeter to Fermi National Accelerator Laboratory in Batavia, Illinois. Schoeberlein's complaint further stated that this product fell upon and injured him during its installation. Purdue responded to this complaint by seeking removal to the United States District Court for the Northern District of Illinois. Although removal was granted, Schoeberlein filed a motion to remand and, by agreed order, the district court remanded the case back to the Kane County circuit court.

After remand, Purdue entered a special and limited appearance (see Ill. Rev. Stat. 1987, ch. 110, par. 2—

301), and filed a motion to dismiss under section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). In its motion, Purdue contended that it was an instrumentality of the State of Indiana and, therefore, immune to suit in Illinois by virtue of the eleventh amendment (U.S. Const., amend. XI) and the full faith and credit clause (U.S. Const., art. IV, §1). Purdue also claimed immunity under the principle of comity, arguing that the Illinois trial court defer to an Indiana statute which provides that the State of Indiana is immune to suit outside its own courts.

The trial court granted Purdue's motion to dismiss. The appellate court for the second district, with one justice dissenting, reversed. (167 Ill. App. 3d 734.) We granted Purdue's petition for leave to appeal as a matter of right under our Rule 317 (107 Ill. 2d R. 317). We reverse the appellate court and affirm the trial court's dismissal of the suit.

Both parties agree that Purdue is an instrumentality of the State of Indiana. (See also *Kashani v. Purdue University* (7th Cir. 1987), 813 F.2d 843.) Consequently, the sole issue on appeal is whether Purdue, as an arm of the State of Indiana, is immune from this suit brought in Illinois.

Purdue raises three grounds upon which its claim of immunity may rest: the eleventh amendment (U.S. Const., amend. XI), the full faith and credit clause (U.S. Const., art. IV, §1), and the principle of comity. Purdue urges that we recognize the immunity granted it by the Indiana Code of Civil Procedure, which states:

"Nothing contained in this chapter shall be construed as a waiver of the eleventh amendment to the Constitution of the United States, as consent by the State of Indiana or its employees to be sued in any federal court or as consent to be sued in any state court beyond the bounda-

ries of the state of Indiana." Ind. Code Ann. §34—4—16.5—5(d) (West 1987).

The seminal Supreme Court decision that addressed the issue of State sovereign immunity asserted on the basis of the eleventh amendment, full faith and credit, and comity was *Nevada v. Hall* (1979), 440 U.S. 410, 59 L. Ed. 2d 416, 99 S. Ct. 1182. The *Hall* Court first held that the eleventh amendment does not prohibit a State from being sued in another State's courts; it only prohibits such suits in Federal court. (*Hall*, 440 U.S. at 420-21, 59 L. Ed. 2d at 425, 99 S. Ct. at 1188.) Second, the *Hall* Court found that the full faith and credit clause does not require the forum State to apply another State's law concerning sovereign immunity if it would contravene the forum State's own legitimate public policy. (*Hall*, 440 U.S. at 422, 59 L. Ed. 2d at 426, 99 S. Ct. at 1189.) Finally, the *Hall* Court stated that although a State may recognize another State's sovereign immunity based on comity, it is not constitutionally mandated. *Hall*, 440 U.S. at 426, 59 L. Ed. 2d at 428, 99 S. Ct. at 1191.

Recognition of a foreign State's law based on comity is not a constitutional command, but rather a common law doctrine. Moreover, we are not restricted by the Constitution in employing this doctrine in the area of State sovereign immunity. (See *Hall*, 440 U.S. at 426, 59 L. Ed. 2d at 429, 99 S. Ct. at 1191.) We have held that constitutional questions will not be considered if the case can be decided on other grounds. (*In re Application of Rosewell* (1983), 97 Ill. 2d 434, 440; *In re Estate of Ersch* (1963), 29 Ill. 2d 572, 576-77.) Therefore, we decline to address the eleventh amendment or full faith and credit concerns raised by Purdue, because we find that we can resolve the issue before us on the common law principle of comity.

Judicial comity is defined as "[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect." (Black's Law Dictionary 334 (4th ed. 1951).) Comity may be granted to another State's law, or to the law of a foreign nation. The intimate nature of the States' relationships with one another leads to a greater degree of comity toward each other than a State may give a foreign nation's law. (16 Am. Jur. 2d *Conflict of Laws* §10 (1979).) Interstate comity is viewed more favorably because the purpose of comity is to foster cooperation, promote harmony, and build goodwill (*Lee v. Miller County* (5th Cir. 1986), 800 F.2d 1372, 1375), and to encourage amiable and respectful relations among individual States (16 Am. Jur. 2d *Conflict of Laws* §9 (1979)). In discussing comity in the context of State sovereign immunity, the Supreme Court said: "It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so." *Hall*, 440 U.S. at 426, 59 L. Ed. 2d at 429, 99 S. Ct. at 1191.

In Illinois, we have not had occasion to consider whether on the basis of comity our courts should respect another State's statutorily imposed sovereign immunity in a tort context. Unless we elect to extend such a statute through the doctrine of comity, the statute generally would be without force beyond the jurisdiction of the enacting State. (See *Dougherty v. American McKenna Process Co.* (1912), 255 Ill. 369, 371.) When deciding whether to apply foreign law in our courts, we must examine the relevant public policies of the State of Illinois. Comity does not obligate us to employ a foreign law that is contrary to a public policy of this State. (*Thomas v. First National Bank* (1904), 213 Ill. 261, 266; see also

*Wall v. Chesapeake & Ohio Ry. Co.* (1919), 290 Ill. 227, 230.) Thus, in Illinois, we have also characterized comity as "provid[ing] a means for courts to refuse to apply foreign law which [is] clearly contrary to the 'public morals, natural justice, or the general interest of the citizens of this State.' [Citation.]" *Nelson v. Hix* (1988), 122 Ill. 2d 343, 352.

Probing the interest the citizens of Illinois have in this issue, we note initially that our State constitution provides that "[e]very person shall find a certain remedy *** for all injuries and wrongs." (Ill. Const. 1970, art. I, §12.) This concept is the same in our current constitution as in our 1870 Constitution, but the drafters of our current constitution substituted "shall" for "ought to." (Ill. Ann. Stat., 1970 Const., art. I, §12, Constitutional Commentary, at 556 (Smith-Hurd 1971).) This change reflected the interpretation given the word "ought" in this section in prior case law. (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1490-91.) Nevertheless, we have held that this constitutional provision merely expresses a philosophy, and does not mandate a certain remedy be provided in any specific form. (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277.) Consequently, it is not violative of this aspirational goal to limit or restrict available remedies. See *Sullivan*, 51 Ill. 2d at 277-78.

In fact, had Schoeberlein sued an instrumentality of the State of Illinois, his remedy would have been only a limited one. First, our legislature vested jurisdiction over this type of action solely in the Illinois Court of Claims. (Ill. Rev. Stat. 1987, ch. 37, par. 439.8.) Thus, a suit filed against this State in an Illinois circuit court would fail for want of proper subject matter jurisdiction. (See *Ellis v. Board of Governors* (1984), 102 Ill. 2d 387.) Moreover, any tort recovery would be limited to $100,000 in the Court of Claims (Ill. Rev. Stat. 1987, ch. 37, par.

439.8(d).) Finally, to successfully seek relief in the Court of Claims for personal injuries, a litigant must meet strict notice requirements. Ill. Rev. Stat. 1987, ch. 37, pars. 439.22—1, 439.22—2.

Similar to our Court of Claims Act, Indiana limits the remedy a litigant can seek when suing the State of Indiana. Indiana law provides sovereign immunity from suit, except when filed in an Indiana court. (Ind. Code Ann. §34—4—16.5—5(d) (West 1987).) Indiana statutes cap potential recovery at $300,000 (Ind. Code Ann. §34—4—16.5—4 (West 1987)), and also provide for a notice requirement (Ind. Code Ann. §34—4—16.5—7 (West 1987)). Within these limitations, however, Indiana freed Schoeberlein to pursue his claim in its courts, thereby affording him a remedy for a proven injury or wrong, a remedy not unlike that furnished by our Court of Claims Act. Therefore, it cannot be said that by honoring Indiana's sovereign immunity statute, this court leaves Schoeberlein without redress, contravening Illinois public policy as stated in our constitution. Schoeberlein had a remedy, but it was one that depended on selecting the proper forum for his grievance.

Furthermore, forum limitations are how both Illinois and Indiana address the issue of sovereign immunity. Both States have statutes limiting State liability and restricting the forum for suit, reflecting public policy considerations. In Illinois, our 1970 Constitution abolished sovereign immunity, "[e]xcept as the General Assembly *** provid[ed] by law." (Ill. Const. 1970, art. XIII, §4.) Concurrent with the effective date of the 1970 Constitution, however, the legislature reenacted the Court of Claims Act. Members of the legislature felt that maintaining limited sovereign immunity was extremely important and necessary to prevent litigation chaos. 77th Ill. Gen. Assem., Senate Proceedings, October 18, 1971, at 22.

There are serious practical problems regarding sovereign immunity that can result if States do not honor each other's immunity provisions. A dissenting opinion in *Nevada v. Hall* illustrated some potential difficulties:

> "I am also concerned about the practical implications of this decision. The federal system as expressed in the Constitution—with the exception of representation in the House—is built on notions of state parity. No system is truly federal otherwise. This decision cannot help but induce some 'Balkanization' in state relationships as States try to isolate assets from foreign judgments and generally reduce their contacts with other jurisdictions. That will work to the detriment of smaller States—like Nevada—who are more dependent on the facilities of a dominant neighbor—in this case, California.

> The problem of enforcement of a judgment against a State creates a host of additional difficulties. Assuming Nevada has no seizable assets in California, can the plaintiff obtain enforcement of California's judgment in Nevada courts? Can Nevada refuse to give the California judgment 'full faith and credit' because it is against state policy? Can Nevada challenge the seizure of its assets by California in this Court? If not, are the States relegated to the choice between the gamesmanship and tests of strength that characterize international disputes, on the one hand, and the midnight seizure of assets associated with private debt collection on the other?" (*Hall*, 440 U.S. at 443, 59 L. Ed. 2d at 439, 99 S. Ct. at 1199-1200 (Rehnquist, J., dissenting).)

Prior to *Nevada v. Hall*, the Supreme Court presumed that States intended to honor each other's declarations of sovereign immunity based on comity. (See *Hall*, 440 U.S. at 425, 59 L. Ed. 2d at 428, 99 S. Ct. at 1190.) Our legislature enacted the Court of Claims Act, in part, to protect the State from interference in the performance of governmental functions and to preserve control over the government's fisc. (*S.J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, 401.) Undoubtedly, our legislature

hoped that other States would respect the Court of Claims Act by refusing jurisdiction over suits in which Illinois is a party defendant. See *Ramsden v. State* (Mo. 1985), 695 S.W.2d 457 (Missouri declined jurisdiction over suit brought against Illinois); contra *Struebin v. State* (Iowa 1982), 322 N.W.2d 84 (Iowa refused to respect Illinois' immunity based on comity).

One case in which this court declined to honor a sovereign immunity claim was *People ex rel. Hoagland v. Streeper* (1957), 12 Ill. 2d 204. In *Streeper*, this court refused to respect the State of Missouri's asserted sovereign immunity claim in an *in rem* action concerning property located within Illinois. Nevertheless, because it was an *in rem* property action, *Streeper* is clearly distinguishable from the case at bar and not dispositive of the issue before us. There are also other aspects of *Streeper* which make the holding in that case inapplicable here.

We note that our sister States, when faced with the issue confronting us today, are split on whether to respect State sovereign immunity. Several States have declined jurisdiction, honoring immunity provisions: Indiana (*Clement v. State* (1988), ____ Ind. App. ____, 524 N.E.2d 36), Missouri (*Ramsden v. State* (Mo. 1985), 695 S.W.2d 457), North Dakota (*Paulus v. State* (1924), 52 N.D. 84, 201 N.W. 867), South Carolina (*Newberry v. Georgia Department of Industry & Trade* (1985), 286 S.C. 574, 336 S.E.2d 464), and Texas (*Lee v. Miller County* (5th Cir. 1986), 800 F.2d 1372 (5th Circuit Federal Court of Appeals applying Texas law)). Other States have refused to recognize State sovereign immunity laws: California (*Hall v. University of Nevada* (1972), 8 Cal. 3d 522, 503 P.2d 1363, 105 Cal. Rptr. 355), Colorado (*Peterson v. State* (Colo. App. 1981), 635 P.2d 241), District of Columbia (*Biscoe v. Arlington County* (D.C. Cir. 1984), 738 F.2d 1352 (Federal Court of Appeals for D.C. Circuit applying D.C. law)), Iowa (*Struebin v. State*

(Iowa 1982), 322 N.W.2d 84), Nevada (*Mianecki v. Second Judicial District Court* (1983), 99 Nev. 93, 658 P.2d 422), and New York (*Ehrlich-Bober & Co. v. University of Houston* (1980), 49 N.Y.2d 574, 404 N.E.2d 726, 427 N.Y.S.2d 604).

We note that in *Hall v. University of Nevada*, wherein comity was denied by the California court, the State of California had waived its own immunity from liability in similar circumstances and permitted full recovery against the sovereign State of California. (See *Nevada v. Hall* (1979), 440 U.S. 410, 424, 59 L. Ed. 2d 416, 427, 99 S. Ct. 1182, 1190.) In *Biscoe v. Arlington County*, the court noted that although Arlington County would be granted immunity if sued in the State of Virginia, the court would not recognize that immunity in the District of Columbia, because had the acts complained of been committed by the police of the District of Columbia, sovereign immunity would not bar suit against the District. (*Biscoe v. Arlington County* (D.C. Cir. 1984), 738 F.2d 1352, 1357.) Also, in *Struebin v. State*, wherein the Iowa Supreme Court refused to recognize the sovereign immunity of the State of Illinois, the supreme court of Iowa noted that the State of Iowa permits suits against Iowa under similar circumstances and permits full compensation. (*Struebin v. State* (Iowa 1982), 322 N.W.2d 84, 86.) Likewise, in *Mianecki v. Second Judicial District Court*, wherein the Nevada Supreme Court would not recognize Wisconsin's claim of sovereign immunity, the court pointed out that had the same acts been committed in the State of Nevada, sovereign immunity would not bar suit against that State. *Mianecki v. Second Judicial District Court* (1983), 99 Nev. 93, 97, 658 P.2d 422, 424.

However, in *Peterson v. State*, the Colorado appellate court would not recognize the claim of sovereign immunity of the State of Texas, although a statute granted

immunity to Colorado's public entities in situations similar to those involved in that lawsuit. The Colorado court relied upon general language of the California Supreme Court in *Hall v. University of Nevada* (1972), 8 Cal. 3d 522, 503 P.2d 1363, 105 Cal. Rptr. 355, without discussing the fact that under California law, full recovery could be had against the State of California, and sovereign immunity was not recognized in circumstances similar to those involved in *Hall v. University of Nevada*. Also, in *Ehrlich-Bober & Co. v. University of Houston*, the court of appeals of New York refused to grant sovereign immunity to the State of Texas in a case involving commercial litigation because of New York's recognized interest in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the nation and the world. (*Ehrlich-Bober*, 49 N.Y.2d at 581, 404 N.E.2d at 730, 427 N.Y.S.2d at 608.) The dissent, however, points out that New York, as does Texas, recognizes the principle of sovereign immunity and states that since New York State's policy parallels that of Texas, New York should recognize and give effect to the legislatively declared policy of Texas.

Thus, the generally accepted rationale of the States that have not, through comity, accepted another State's claim of sovereign immunity is that a sister State's claim of immunity will not be recognized if the forum of litigation permits recovery against the home State under similar circumstances. In Illinois, as noted above, under the circumstances presented in this case, Illinois could not be sued in the circuit courts of this State, and a limitation is placed on the amount that may be recovered against Illinois in the Court of Claims. We conclude that on the basis of comity, it is consistent with policies expressed by our Court of Claims Act and not inconsistent with policies in our State constitution to honor Indiana's reservation of sovereign immunity. We hold that the trial court

properly granted Purdue's motion to dismiss, declining jurisdiction over this cause. Accordingly, the decision of the circuit court is affirmed, and the decision of the appellate court is reversed.

*Circuit court affirmed;*
*appellate court reversed.*

JUSTICE CALVO, dissenting:

Because I conclude that recognition of the Indiana sovereign immunity statute violates Illinois' public policy of compensating injured persons, I respectfully dissent. The majority admits that our State constitution reflects a policy to provide every injured person with a remedy. (Ill. Const. 1970, art. I, §12.) Pursuant to this policy, Illinois allows full compensation in its courts for persons injured as a result of the negligence of residents or nonresidents. (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(a); see Ill. Rev. Stat. 1987, ch. 110, par. 2—621.) Schoeberlein resides in and the injury occurred in Illinois. Illinois could hardly have any greater interest than it does here in providing an injured person with a remedy.

Indiana, through Purdue, voluntarily sold an allegedly defective product to a company in Illinois and the product injured an Illinois resident. Indiana conducted itself in Illinois as if it were any other nonresident business. Indiana chose to sell its product outside its boundaries, thereby taking the risk that the product would injure someone outside its borders. The California court in *Hall v. University of Nevada* stated:

"We have concluded that sister states who engage in activities within California are subject to our laws with respect to those activities and are subject to suit in California courts with respect to those activities. When the sister state enters into activities in this state, it is not exercising sovereign power over the citizens of this state and is not entitled to the benefits of the sovereign immu-

nity doctrine as to those activities unless this state has conferred immunity by law or as a matter of comity." (*Hall v. University of Nevada* (1972), 8 Cal. 3d 522, 524, 503 P.2d 1363, 1364, 105 Cal. Rptr. 355, 356, *aff'd* (1979), 440 U.S. 410, 59 L. Ed. 2d 416, 99 S. Ct. 1182.)

I find the reasoning in *Hall v. University of Nevada* persuasive and applicable to the case at bar. Indiana elected to do business and perform activities in Illinois and, therefore, subjected itself to the risk of liability in Illinois. Consequently, Indiana should not be allowed to shield itself from liability in Illinois.

The majority is concerned that a contrary decision would jeopardize Illinois' own sovereign immunity. The majority asserts that Indiana and Illinois have similar limited sovereign immunity doctrines. Illinois has not waived its sovereign immunity completely, the majority argues, because Illinois wants "to protect the State from interference in the performance of governmental functions and to preserve control over the government's fisc." As the majority notes, Illinois can only be fully protected from suits in other States if the other States recognize Illinois sovereign immunity and refuse jurisdiction over suits brought against Illinois. No direct harm to Illinois sovereign immunity would occur if we allowed Schoeberlein's suit because Illinois is not a party to the suit. Any harm would only be indirect in that other States may not, likewise, recognize Illinois sovereign immunity. After *Nevada v. Hall* (1979), 440 U.S. 410, 59 L. Ed. 2d 416, 99 S. Ct. 1182, however, other States are not obligated to recognize Illinois sovereign immunity (see *Struebin v. State* (Iowa 1982), 322 N.W.2d 84 (Iowa refused to recognize Illinois sovereign immunity)), even if Illinois recognizes their immunity.

The majority quotes at length Justice Rehnquist's dissenting opinion in *Nevada v. Hall*. In his dissent, Rehnquist discussed the problems that might arise if States

refused to honor each other's immunity statutes. (*Hall*, 440 U.S. at 443, 59 L. Ed. 2d at 439, 99 S. Ct. at 1199-1200.) The *holding* of *Nevada v. Hall*, however, is that a forum State can *choose not to recognize* another State's immunity if the forum State decides that such recognition would violate the public policy of the forum State. (*Hall*, 440 U.S. at 425-27, 59 L. Ed. 2d at 428-29, 99 S. Ct. at 1190-91.) Thus, the majority in *Nevada v. Hall* decided that the forum State's public policy considerations could take precedence over the forum State's concerns with harmonious interstate relations. *Hall*, 440 U.S. at 426, 59 L. Ed. 2d at 429, 99 S. Ct. at 1191.

The majority states that by recognizing Indiana sovereign immunity Schoeberlein is not left without redress because he could have filed suit in Indiana. Schoeberlein simply chose the wrong forum. Thus, the majority concludes, Illinois' public policy of compensating the injured is not violated. The actual result of the majority's decision, however, completely denies Schoeberlein any recovery. In Indiana, an injured person has to provide the State with notice of the injury within 180 days of the occurrence of the injury. (Ind. Code Ann. 34—4—16.5—6 (West 1987).) Schoeberlein can no longer seek redress in Indiana because of the 180-day notice requirement.

The majority emphasizes that had Schoeberlein sued an instrumentality of Illinois in Illinois, he could have only brought suit in the Court of Claims. He could not have filed suit against an instrumentality of Illinois in an Illinois circuit court. I find that distinction irrelevant. Indiana does not have a court of claims, so if Schoeberlein filed suit in Indiana, an Indiana circuit court would have tried his case. The Court of Claims has jurisdiction primarily over suits brought against an instrumentality of the State of Illinois. (Ill. Rev. Stat. 1987, ch. 37, par. 439.8.) Because Indiana is not an instrumentality of Illi-

nois, Schoeberlein can properly file suit against Indiana in an Illinois circuit court.

Although Illinois has retained its sovereign immunity, that *immunity* is *limited*. Illinois has a substantial interest in compensating its injured citizens. (Ill. Const. 1970, art. I, §12; Ill. Rev. Stat. 1987, ch. 110, pars. 2—209(a), 2—621.) I agree with the Colorado court that "where the injured party is a citizen of this state, injured in this state and sues in the courts of this state, there is no immunity, *** as a matter of comity, covering a sister state's activities in this state." (*Peterson v. State* (Colo. App. 1981), 635 P.2d 241, 243.) As the majority acknowledges, the Colorado court in *Peterson v. State* would not acknowledge Texas sovereign immunity even though Colorado public entities would have had immunity under similar circumstances. (See *Peterson*, 635 P.2d at 242.) In addition, in *Ehrlich-Bober & Co. v. University of Houston* (1980), 49 N.Y.2d 574, 404 N.E.2d 726, 427 N.Y.S.2d 604, New York did not recognize Texas sovereign immunity even though New York and Texas had similar sovereign immunity policies. (See *Ehrlich-Bober*, 49 N.Y.2d at 584, 404 N.E.2d at 732-33, 427 N.Y.S.2d at 610-11 (Jones, J., dissenting).) Thus, even assuming Illinois and Indiana have similar immunity policies, Illinois need not recognize Indiana sovereign immunity because Illinois has a strong public policy of protecting and compensating its injured citizens. In light of *Nevada v. Hall*, such a decision would not harm Illinois sovereign immunity. Consequently, I would affirm the decision of the appellate court.