982 F.2d 1147
 Brenda WELLS, Administrator of the Estate of Danny J. Wells,
deceased, Plaintiff-Appellant, Cross-Appellee,
v.
VINCENNES UNIVERSITY, Board of Trustees of Vincennes
University and Scott K. Foncannon, Special
Administrator of the Estate of James
Jernigan, deceased,
Defendants-
Appellees,
Cross-Appellants.
 Nos. 91-2958, 91-3062, 92-1523, 92-1659.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 20, 1992.
Decided Dec. 29, 1992.
As Amended Jan. 11, 1993.
 
 Stephen J. Hough, Croegaert, Clark & Hough, Olney, IL, Joseph L. Bauer, Jr. (argued), Drew C. Baebler, Schlichter Law Associates, Fairview Heights, IL, for Brenda Wells.
 H. Brent Stuckey, Hart, Bell, Deem, Ewing & Stuckey, Vincennes, IN, Mark J. Ballard, Campbell, Black, Carnine & Hedin, Mt. Vernon, IL, Kenneth D. Ross, Candace Mrakovich (argued), John W. Harrington, Ross & Harrington, Chicago, IL, for Vincennes University.
 William A. Alexander, Edwina Warner (argued), Troutt, Alexander, Popit & Warner, Benton, IL, Kenneth D. Ross, Candace Mrakovich (argued), John W. Harrington, Ross & Harrington, Chicago, IL, for Board of Trustees of Vincennes University, Scott K. Foncannon.
 Before KANNE and ROVNER, Circuit Judges, and WILL, Senior District Judge.*
 ILANA DIAMOND ROVNER, Circuit Judge.
 
 
 1
 On October 31, 1987, a small airplane crashed at an Illinois airport during an air show celebrating Dad's Weekend at Vincennes University (the "University"). Although there is no direct evidence of who was flying the dual-control plane at the time of the crash, circumstantial evidence suggests that James Jernigan was at the controls. Jernigan, an aviation instructor at the University, allegedly failed to pull the plane out of a low-level spin maneuver at the end of an aerobatics performance. Jernigan and his passenger, Danny Wells ("Danny"), died as a result. This lawsuit ensued, raising an interesting choice of law question.
 
 I. BACKGROUND
 
 2
 In 1985, Danny was employed as a flight instructor with the University's Department of Aviation Flight Technology. The University is organized under the laws of the State of Indiana and has its main campus in Vincennes, Indiana, which borders the town of Lawrenceville, Illinois. The University leases a terminal and a commercial repair building at the Lawrenceville/Vincennes Municipal Airport in Lawrenceville, where it maintains a fully staffed Department of Aviation.
 
 
 3
 The University encouraged all departments to sponsor activities during Dad's Weekend and invited all instructors to attend. As in past years, Alpha Eta Rho, an aviation student fraternity (the "Fraternity"), and its faculty advisor, Jernigan, planned the aviation activities at the airport.
 
 
 4
 At the air show on October 31, 1987, students demonstrated airplane maneuvers, bomb drops and accuracy landings. During a lunch break in the flight competition, a faculty member customarily conducted an aerobatics demonstration. This demonstration was not officially recognized by the University, but University officials were aware that the event had become a tradition over the past four or five years. Donald Marquez, the Chairman of the Aviation Department, had conducted these demonstrations in the past, but it was agreed that Jernigan, who taught a class in aerobatics, would conduct the 1987 flight demonstration.
 
 
 5
 Like many faculty members, Danny was present at the Dad's Weekend festivities. He volunteered to accompany Jernigan on the lunch-hour demonstration, and at noon they boarded a University-owned Bellanaca Decathlon airplane. During the thirteen-minute flight, Jernigan performed loops, rolls, hammerhead turns and inverted flights. Immediately prior to the crash, either Danny or Jernigan stated over the radio that they were going to perform one last spin "and then put it in the barn." The plane had completed two turns of the spin when the rotation stopped. The plane was flying too low to recover and crashed into the ground.
 
 
 6
 On October 27, 1989, Danny's widow, Brenda Wells ("Brenda"), filed a six-count complaint pursuant to the Illinois Wrongful Death Act, Ill.Rev.Stat. ch. 70, pp 1-2, against the University, the Board of Trustees of the University (the "Board"), the University Foundation Board (the "Foundation"), the Fraternity and Scott Foncannon, as administrator of Jernigan's estate. In the first four counts, Brenda sued the University, the Board and the Foundation for the allegedly negligent acts of the University, as well as for those allegedly negligent acts of the Fraternity and Jernigan that came within the scope of their agency relationship with the University. In Count V, Brenda sued Jernigan's estate directly for those of his acts that fell outside the scope of his employment. Finally, in Count VI, Brenda sued the Fraternity for its individual acts. Subsequently, she voluntarily dismissed her claims against the Foundation and the Fraternity.
 
 
 7
 The Board then filed a motion to dismiss, arguing that the University was not a proper party to the lawsuit and that only the Board could be sued under Indiana law. The Board also argued that it is an arm of the State and therefore immune from suit in federal court under the Eleventh Amendment. Finally, the Board argued that the suit is barred by the Indiana Tort Claims Act because Brenda had not filed a notice of claim with the State within six months of the accident. See Ind.Code § 34-4-16.5-7(a).
 
 
 8
 The district court granted the Board's motion to dismiss on March 8, 1991. The court agreed that the University was an improper party. However, the court rejected the Board's assertion of Eleventh Amendment immunity, finding that it had been waived in the University's charter. Nonetheless, the court held that state courts in Illinois would have applied the Indiana notice provision and accordingly dismissed the case because Brenda had not complied with that provision. Moreover, because Brenda had alleged in her complaint that Jernigan was acting within the scope of his employment with the University at the time of the crash, the district court utilized the same rationale to dismiss Brenda's claims against Foncannon.
 
 
 9
 Pursuant to her motion to reconsider, the court allowed Brenda to pursue her claim against Foncannon in Count V for those negligent acts of Jernigan that might fall outside the scope of his employment. The court also entered final judgment pursuant to Fed.R.Civ.P. 54(b) on Counts I through IV of the complaint. Brenda then appealed from the dismissal of these counts, and the Board and Foncannon cross-appealed on the issue of Eleventh Amendment immunity.
 
 
 10
 At the same time the appeals were pending, Foncannon filed a motion for summary judgment on Count V in the district court. Foncannon argued that Jernigan had been acting within the scope of his employment when the plane crashed. Foncannon also argued that the Illinois Worker's Compensation Act provided Brenda's exclusive remedy.
 
 
 11
 The district court granted Foncannon's motion for summary judgment. The court held that Jernigan was acting within the scope of his employment at the time of the crash and that the Indiana Tort Claims Act bars claims against such an employee. See Ind.Code § 34-4-16.5-5(a). However, the court rejected Foncannon's argument that the Worker's Compensation Act provided Brenda's exclusive remedy. The parties cross-appealed these holdings.
 
 II. ANALYSIS
 
 12
 A. Application of the Indiana Tort Claims Act.
 
 
 13
 The first issue on appeal is whether the district court properly applied the doctrine of comity when deciding that Brenda was required to comply with the Indiana notice provision in this Illinois action. Brenda argues that the district court erroneously relied on the decision of the Illinois Supreme Court in Schoeberlein v. Purdue Univ., 129 Ill.2d 372, 135 Ill.Dec. 787, 544 N.E.2d 283 (1989), in concluding that Illinois courts would apply the Indiana Tort Claims Act as a matter of comity. Brenda argues that application of the Indiana statute violates Illinois public policy, which favors a remedy for its harmed citizens. Brenda also contends that under a traditional choice of law analysis, the district court should have applied Illinois rather than Indiana law.
 
 
 14
 We review the decision of the district court to dismiss Counts I through IV de novo, accepting as true all facts alleged in the complaint and drawing all reasonable inferences in favor of Brenda. See Schiffels v. Kemper Financial Services, Inc., 978 F.2d 344, 346-47 (7th Cir.1992).
 
 
 15
 The Indiana Tort Claims Act states in pertinent part:
 
 
 16
 [A] claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision; and (2) the Indiana political subdivision risk management commission ... within one hundred eighty (180) days after the loss occurs.
 
 
 17
 Ind.Code § 34-4-16.5-7(a).[1] The same notice requirement applies to claims against state employees for acts within the scope of their employment. See Ind.Code § 34-4-16.5-5(a); Burks v. Bolerjack, 427 N.E.2d 887, 889 (Ind.1981). There is no dispute that Brenda did not comply with the Indiana notice provision. Therefore, if the Indiana notice of claim provision applies, the district court properly dismissed Brenda's claims against the Board and Jernigan's estate.
 
 
 18
 Under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), when a federal court exercises diversity jurisdiction over state law claims, " 'the outcome of the litigation should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.' " Felder v. Casey, 487 U.S. 131, 151, 108 S.Ct. 2302, 2313, 101 L.Ed.2d 123 (1988) (quoting Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945)). For example, federal courts in Wisconsin entertaining state law claims against Wisconsin municipalities are obligated to apply Wisconsin notice of claim provisions. Felder, 487 U.S. at 151, 108 S.Ct. at 2313 (citing Orthmann v. Apple River Campground, Inc., 757 F.2d 909, 911 (7th Cir.1985)). The issue in this case is slightly different. The inquiry is whether a federal court in Illinois entertaining a state law claim against an Indiana university is obligated to apply an Indiana notice of claim provision.
 
 
 19
 We look to the choice of law provisions of the forum state in deciding this question. Patton v. Mid-Continent Sys., Inc., 841 F.2d 742, 749 (7th Cir.1988). In an analogous situation, the Illinois Supreme Court held that a reservation of sovereign immunity in the Indiana Tort Claims Act should be given effect in Illinois. Schoeberlein, 129 Ill.2d at 384, 135 Ill.Dec. at 792, 544 N.E.2d at 288. In Schoeberlein, the plaintiff sued Purdue University ("Purdue") for an injury caused by a product that Purdue had sold to his Illinois employer. Purdue argued that it was immune from suit outside of Indiana based on a provision of the Indiana Tort Claims Act. See Ind.Code § 34-4-16.5-5(d).
 
 
 20
 In agreeing with Purdue, the Illinois Supreme Court applied the doctrine of comity--" '[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect.' " Schoeberlein, 129 Ill.2d at 378, 135 Ill.Dec. at 789, 544 N.E.2d at 285 (quoting Black's Law Dictionary 334 (4th ed. 1951)). The court noted that the purpose of comity is to foster cooperation, harmony, goodwill and respectful relations among the individual states. Id. However, the court stated that Illinois courts will not apply a foreign law that is clearly contrary to the " 'public morals, natural justice, or general interest of the citizens of this state.' " Id. at 379, 544 N.E.2d at 285 (quoting Nelson v. Hix, 122 Ill.2d 343, 352, 119 Ill.Dec. 355, 361, 522 N.E.2d 1214, 1220 (1988)).
 
 
 21
 The supreme court held that application of the Indiana sovereign immunity provision does not contravene Illinois public policy. The court noted that although article I, section 12 of the Illinois Constitution provides that "[e]very person shall find a certain remedy ... for all injuries and wrongs," this provision merely expresses a philosophy and does not require that a remedy be provided in any specific form. As a result, a limitation or restriction on remedies does not violate the Constitution's "aspirational goal." Id. at 379, 135 Ill.Dec. at 790, 544 N.E.2d at 286.
 
 
 22
 The supreme court noted that the Indiana Tort Claims Act and the Illinois Court of Claims Act were similar in that both statutes limit the avenues of relief open to a litigant suing a state instrumentality. The Illinois statute provides for sovereign immunity except when a lawsuit is filed in the Illinois Court of Claims, and the Indiana statute provides for sovereign immunity except when the suit is filed in an Indiana court. See Ill.Rev.Stat. ch. 37, p 439.8; Ind.Code § 34-4-16.5-5(d). Both statutes also place a cap on potential damage awards. See Ill.Rev.Stat. ch. 37, p 439.8(d) (claims limited to $100,000); Ind.Code § 34-4-16.5-4 (claims limited to $300,000). Finally, both statutes impose strict notice requirements--Illinois mandates a one-year notice of claim, and Indiana requires notice within one hundred eighty days. Ill.Rev.Stat. ch. 37, pp 439.22-1, 439.22-2; Ind.Code § 34-4-16.5-7. Because it found the two statutes to be so similar, the supreme court concluded that the plaintiff's remedy would have been equally limited regardless of which statute applied. See Schoeberlein, 129 Ill.2d at 379, 135 Ill.Dec. at 790, 544 N.E.2d at 286.
 
 
 23
 The identical argument applies here. If Brenda had sued an Illinois instrumentality, the Illinois statute would have required her to file a notice of claim with the State of Illinois, just as the Indiana statute would have required her to file a notice of claim with the State of Indiana. Because Brenda waited almost two years to file the complaint, her suit would have been barred under either statute. The application of the Indiana notice provision does not impose an additional burden on Illinois citizens that the State of Illinois has not also seen fit to impose. In other words, Brenda's remedy is equally limited in both Illinois and Indiana. Therefore, application of the Indiana law does not undermine the Illinois public policy in favor of providing a remedy for its own citizens.
 
 
 24
 Moreover, application of the Indiana notice provision furthers an important goal emphasized in Schoeberlein. In applying the Indiana sovereign immunity provision to an Illinois cause of action, the supreme court explained that the Illinois legislature, in passing the Court of Claims Act, hoped that other states would respect that Act "by refusing jurisdiction over suits in which Illinois is a party defendant." Id. at 381-382, 135 Ill.Dec. at 791, 544 N.E.2d at 287. That end can only be attained by extending the same protection to similar provisions of sister states. Indeed, Indiana also appears to have a policy of respecting the sovereign immunity provisions of other states. See Clement v. State, 524 N.E.2d 36, 43 n. 3 (Ind.1988) (applying a Kentucky sovereign immunity statute).
 
 
 25
 Notwithstanding Schoeberlein, Brenda argues that the notice provision should not apply here because the University is not a political subdivision of the State of Indiana. Yet, the Indiana Tort Claims Act defines "political subdivision" to include state universities, and Vincennes is a state university. See Ind.Code § 34-4-16.5-2(f)(7).
 
 
 26
 Brenda also argues that the University charter waives state sovereign immunity and permits suit "in all courts and places whatsoever, in all manner of actions, suits, complaints, matters and causes whatsoever." Ind.Code § 23-13-18-1. But, even if this statute waives application of the forum selection clause in the Indiana Tort Claims Act, a question this Court need not decide, the charter does not waive application of the notice provision. The University charter is therefore irrelevant here.
 
 
 27
 Finally, Brenda argues that her case differs from Schoeberlein in that the University has more extensive contacts with Illinois than does Purdue. Admittedly, many traditional choice of law factors might favor the application of Illinois law. However, the Illinois Supreme Court already has decided, as a matter of comity, to apply the same Indiana statute under analogous circumstances. We will not revisit that decision.
 
 
 28
 The Indiana statute required Brenda to file her notice of claim within 180 days of the accident. Her failure to do so bars her claims against the state entities.[2]
 
 
 29
 B. Scope of Jernigan's Employment.
 
 
 30
 One issue remains: whether Jernigan was acting within the scope of his employment at the time of the crash. Brenda contends that Jernigan was not acting within the scope of his employment and that the district court therefore erred in granting summary judgment to Foncannon. See Ind.Code § 34-4-16.5-5(a); see also Bitzer v. Pradziad, 571 N.E.2d 593, 596 (Ind.App.1991). We review a grant of summary judgment de novo. We will uphold the entry of summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. A.V. Consultants, Inc. v. Barnes, 978 F.2d 996, 1000 (7th Cir.1992).
 
 
 31
 To determine whether Jernigan was acting within the scope of his employment, an Indiana court would look to the Restatement (Second) of Agency.[3] Seymour Nat'l Bank v. State, 428 N.E.2d 203, 204 n. 2 (Ind.1981). The Restatement provides that:
 
 
 32
 Conduct of a servant is within the scope of employment if, but only if:
 
 
 33
 (a) it is of the kind he is employed to perform;
 
 
 34
 (b) it occurs substantially within the authorized time and space limits;(c) it is actuated, at least in part, by a purpose to serve the master, and;
 
 
 35
 (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
 
 
 36
 Restatement (Second) of Agency § 228 (1958).
 
 
 37
 Under this test, Jernigan was acting within the scope of his employment when he gave the aerobatics demonstration. Jernigan was an aerobatics instructor at the University and a faculty advisor for the Fraternity. Jernigan worked with the Fraternity to plan the air show for Dad's Weekend. A faculty member traditionally flew the demonstration flight. Finally, the flight occurred in a University-owned plane on a University campus during a University-sponsored activity. Thus, under the Restatement, Jernigan was acting within the scope of his employment with the University.
 
 
 38
 In contesting that conclusion, Brenda relies on an investigative report of the National Transportation Safety Board, which noted that the University did not "condone the activity." However, the same report also states that "the school is aware that [the instructor's flight] had become a tradition." Based on this and the other evidence produced by Foncannon, the district court reasonably concluded that the University had given its tacit consent to the aerobatics demonstrations, particularly when University officials knew that the demonstrations had been a tradition for four or five years and Aviation Department Chair Marquez encouraged Jernigan's flight.
 
 
 39
 Finally, Brenda argues that Jernigan's conduct was "outrageous," taking it outside the scope of the immunity granted by the Indiana Tort Claims Act. See Seymour National Bank, 428 N.E.2d at 204 (employees' acts might be so outrageous as to be incompatible with the performance of the duty undertaken). But Jernigan's flight cannot be viewed as outrageous. The flight apparently was not much different from the routine Jernigan performed for his aerobatics class. The fact that Jernigan may have mistakenly flown at a "dangerously low altitude" could be viewed as negligent, but not outrageous. The district court properly entered summary judgment for Foncannon on Count V.[4]
 
 III. CONCLUSION
 
 40
 We are mindful of the fact that this plane crash had tragic consequences for Danny Wells and his family. However, Brenda Wells failed to file a timely notice of claim as required by Indiana law. The Court's sympathy for a litigant cannot revive a cause of action that has been barred. Accordingly, the decision of the district court to dismiss Counts I through IV of the complaint and to grant summary judgment in favor of Foncannon on Count V is AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge for the United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [1]
 A "political subdivision" as defined by the statute includes state colleges and universities. Ind.Code § 34-4-16.5-2(f)(7)
 
 
 [2]
 Because we hold that the Indiana notice provision applies, we need not consider whether the University waived its Eleventh Amendment immunity
 
 
 [3]
 The parties agree that Indiana law applies to this question
 
 
 [4]
 Because we find that Jernigan was working within the scope of his employment at the time of the crash, we need not address Foncannon's alternative argument that Brenda's exclusive remedy is found in the Worker's Compensation Act